364 S.E.2d 794

**Carmen A. ROIG**

v.

**George M. ROIG.**

**No. 17155.**

Supreme Court of Appeals of
West Virginia.

Dec. 2, 1987.

Rehearing Denied Feb. 3, 1988.

W. Dean DeLaMater, Weirton, for Carmen Roig.

Jeremy C. McCamic, Wheeling, for George Roig.

NEELY, Justice:

This divorce case involves a wealthy doctor and his wife. The wife's appeal asks us to pick every imaginable nit from a court order awarding her $4,000 a month in alimony and child support and $365,287 as her half of the marital property. Although the appellant urges 15 assignments of error divided into twice again as many sub-assignments, we dispose of all but three specific assignments and one general assignment by repairing to the ancient wisdom of Syllabus Point 5 of *Lieberman v. Lieberman*, 142 W.Va. 716, 98 S.E.2d 275 (1957):

The findings of the trial chancellor, based on conflicting evidence, will not be

disturbed on appeal unless such findings are clearly wrong or against the preponderance of the evidence.

## I

George and Carmen Roig were married in 1962 when Carmen was employed as a hospital laboratory technician and George was waiting to continue his medical studies in Spain. From 1962 until 1972, when Dr. Roig finished his residency in anesthesiology, Mrs. Roig earned more than Dr. Roig and, in addition to caring for their two children, Mrs. Roig worked to support the family. In 1972, the couple moved from Chicago to Weirton, and Mrs. Roig became a full time housewife and mother. Sometime in 1975 the parties built a house with a mortgage of $110,000. Mrs. Roig ran the household (with some hired help) and cared for the three children, while Dr. Roig supported the family on a steadily rising income from his medical practice. In 1974 Dr. Roig earned $96,476; by 1983, the last full year for which there is an income figure, Dr. Roig earned $173,450.

The case before us began in October, 1982 when Mrs. Roig filed for separate maintenance on the grounds of cruelty. Dr. Roig responded a year later with a counterclaim for divorce based on one year voluntary separation. After exhaustive hearings, the circuit court granted Mrs. Roig $3,000 a month in permanent alimony and $1,000 a month in child support for two minor children in addition to $365,287 as Mrs. Roig's half of the marital property. Dr. Roig was also required to keep existing health insurance policies for Mrs. Roig and the minor children in effect and was required to make tuition payments for the two children during high school and college.

## II

We find that the circuit court made two significant errors of law relating to the evaluation of the marital property that require reversal. In addition, there is one assignment of error challenging a ruling by

the circuit court that was correct under our own earlier interpretation of the law, but that must be reversed because we erred ourselves in an earlier case. We shall simply address these issues *seriatim*.

## A

■ Appellant assigns as error the trial court's inclusion of three Shearson Accounts with an estimated value of $50,000 held by the appellant as custodian for each of the three children under the West Virginia Uniform Gift to Minors Act as marital property. Each of these accounts clearly stated that the children were the equitable owners, yet the circuit court found that the accounts were marital assets and allocated them to the appellant as part of her distributive share. We agree with appellant that this ruling contravenes *W.Va.Code*, 36–7–3 [1971][1] which provides:

(a) A gift made in the manner prescribed in this article is irrevocable and conveys to the minor indefeasibly .vested legal title to the security, life insurance policy, annuity contract or money given, but no guardian of the minor has any right, power, duty or authority with respect to the custodial property except as provided in this article.

Unfortunately, the trial court did exactly what *W.Va.Code*, 36–7–3(a) [1971] says cannot be done—by his order the trial court said that these accounts belong to the parents instead of the children.

Indeed, there is evidence in the record that Mrs. Roig used the interest on these accounts to purchase a fur coat for herself and for other of her expenses. Whether that was proper is an issue that Mrs. Roig may one day fight about with the children; however, the custodian's use of the interest on the accounts does not convert them from the children's separate property to the custodian's property. Therefore, we find that the court erred in declaring the Shearson Accounts marital property.

---

**1.** Article 7, Chapter 36 of the *W.Va.Code*, was substantially amended in 1986. The new section that most closely parallels *W.Va.Code*, 36–7–3 [1971] is *W.Va.Code*, 36–7–11(b) [1986].

### B

Next the appellant asserts that the trial court erred in reducing the combined value of two pension plans and a profit sharing plan in order to take into consideration Dr. Roig's deferred income tax liabilities. The pension plans worth $114,981 were discounted $66,897 and the profit sharing plan worth $181,894 was discounted $85,979 for inchoate tax liabilities. Unfortunately, it is almost impossible to understand what the expert witnesses on the pension and profit sharing plan issue were talking about from the record before us. Apparently the appellee's contention below was that if the plans were liquidated at the time of divorce, tax penalties would be payable under the *Internal Revenue Code* because of termination of the plan before retirement. Alternatively, appellee's position was that sometime in the future appellee would be required to pay income tax at the 50 percent marginal rate on his withdrawals from the plan. For these reasons appellee asserted that the actual value of the pension and profit sharing plans was substantially less than the cash balance of the plans at the time of divorce.

Indeed, there may be actuarial merit to the appellee's contentions in this regard, but there was no incisive analysis of the relationship between tax deferred accumulations of interest earnings on money that, but for the pension plan, would be paid to the federal government in taxes immediately, and the ultimate tax liability. Although the trial judge's adjustment in the value of the pension plan may be accurate, it is not supported by the weight of the evidence. Yet, ironically, it is not contradicted by the weight of the evidence either, and we are reluctant to speculate on what the proper evaluation should be.

The pension assets constitute a significant percentage of the total marital estate and it was error for the trial court not to demand accurate, methodologically sound, expert testimony on the present value of the right to receive pensions. Modern divorce cases are different from traditional civil lawsuits. When a court is asked to divide property equitably to allow the parties to go their separate ways there is no plaintiff or defendant for the purposes of allocating the burden of proof. When a divorce proceeding focuses on the distribution of property, as opposed to the assessment of fault, the burden of proof is upon both parties to present evidence that will assist the court in reaching a sound result. Accordingly, we remand this case for a new hearing on this issue to develop an appropriate factual record and for the trial court to reconsider his original ruling in light of the evidence adduced at the hearing.

### C

The appellant next asserts that the trial court erred in including in the marital estate the value of $15,000 of jewelry and furs that the appellant alleges were gifts to her from the appellee and the appellee's aunt. In this regard, appellant cites *W.Va. Code*, 48-2-1(f)(4) [1984] that defines separate property as "property acquired by a person during marriage by gift, bequest, devise, descent or distribution."

The circuit court's decision was in accord with Syl. Pt. 2 of *Hamstead v. Hamstead*, 178 W.Va. 23, 357 S.E.2d 216 (1987), where we said: "Under *W.Va.Code*, 48-2-1(e)(1) [1986], property and earnings acquired by either spouse during a marriage, except property specifically excluded by *Code*, 48-2-1(f) [1986], is marital property for purposes of equitable distribution at the time of divorce notwithstanding that the assets have been acquired by one spouse and 'given' to the other." Unfortunately, in *Hamstead* our attention was not directed to *W.Va.Code*, 48-3-10 [1984] which provides:

"Where one spouse purchases real or personal property and pays for the same, but takes title in the name of the other spouse, such transaction shall, in the absence of evidence of a contrary intention, be presumed to be a gift by the spouse so purchasing to the spouse in whose name the title is taken: Provided, That in the case of an action under the provisions of article two [§ 48-2-1 et seq.] of this

chapter wherein the court is required to determine what property of the parties constitutes marital property and equitably divide the same, the presumption created by this section shall not apply, and a gift between spouses must be affirmatively proved."

Obviously, under *Code,* 48–3–10 [1987] the legislature must have intended that valid gifts between spouses could bring property that otherwise would be "marital" property within the *Code,* 48–2–1(f)(4) [1986][2] exception to marital property. Our decision in *Hamstead, supra,* was predicated on a reading of *Code,* 48–2–1(f)(4) [1986] *alone,* and standing *alone* the word "gift" is used in conjunction with other words that relate only to transfers from persons outside the marital partnership.

 Now that our attention has been directed to the express language of *Code,* 48–3–10 [1984], we conclude that our holding in Syl. Pt. 2 of *Hamstead* is incorrect: it was obviously the intent of the legislature to allow one spouse to transfer property to the other spouse by irrevocable gift and thereby remove the assets so transferred from inclusion in the marital estate. However, in keeping with the spirit of *Code,* 48–3–10 [1984], in order for property that is transferred from one spouse to the other during marriage to be excluded from the marital property pool, there must be proof that the property was intended as an irrevocable gift. In this regard, jewelry and fur coats are the type of "gift" that can almost be proven by circumstantial evidence; however, when real property, stocks, bonds, or other stores of family wealth are at stake, it requires considerably more than the simple fact that property was transferred from one spouse to the other to establish a qualified *Code,* 48–2–1(f)(4) [1986] gift. In all instances, the burden of proof is upon the spouse who would claim the gift. In this regard, as we said in *Patterson v. Patterson,* 167 W.Va. 1, 277 S.E.2d 709 (1981):

... The court cannot be blind to the obvious fact that most married persons do not contemplate divorce throughout the entire course of a marriage, and that transfers of property between spouses is usually intended for the joint benefit of both. While we must retain the presumption of gift in order to avoid difficult third-party claims (since spouses usually do intend to confer the benefit of property on their other spouse in the event of their death), the presumption of gift is probably best rebutted in a suit between spouses by a clear showing of unjust enrichment. Most people do not intend unjustly to enrich the other man.

Accordingly, on the issue of gift, this case is reversed and remanded to the circuit court with directions to take further action, as required, consistent with our holding today overruling Syl. Pt. 2 of *Hamstead, supra.*

### III

 Finally, the appellant argues generally that the circuit court erred by not granting her a higher award of alimony, and that the court should have taken into greater consideration her efforts in supporting the appellee during his years of medical training. Under the trial court's ruling the appellant received $36,000 a year in permanent alimony plus a property distribution of $365,287. Furthermore, appellant is a skilled laboratory technician with teenage children. There is nothing in the record to indicate that appellant is incapable of returning to work and earning the salary of a skilled technician. Under these circumstances, we find no abuse of the trial court's discretion in his alimony award, nor do we find an abuse of discretion in not allocating a higher percentage of the marital estate to the appellant because of her exertions on the appellee's behalf when he was in medical training.

However, for the reasons set forth above in Subsections A, B and C of Part II of this opinion concerning the erroneous ruling on

**2.** Although *W.Va.Code,* 48–2–1(f)(4) was amended in July 1986, the change does not affect our interpretation of the *Code* as the legislature merely substituted the term "party" for "person."

the children's Shearson Accounts, the adjustment of the pension and profit sharing plans, and the question of gifts, the judgment of the Circuit Court of Hancock County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed in part; Affirmed in part; Remanded with directions.