419 S.E.2d 464

**Shelly Kiraly KAPFER, Plaintiff Below, Appellant,**

v.

**Louis Andrew KAPFER, Defendant Below, Appellee.**

No. 20674.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1992.

Decided May 29, 1992.

Delby B. Pool, Clarksburg, for appellant.

Douglas A. Cornelius, Clarksburg, for appellee.

PER CURIAM:

Shelly Kiraly Kapfer appeals the final order of the Circuit Court of Harrison County that granted her a divorce from Louis Andrew Kapfer on the grounds of irreconcilable difference, distributed property and awarded her alimony. On appeal, Mrs. Kapfer contends that the circuit court awarded an inadequate amount of alimony, failed to evaluate certain property, improperly allowed Mr. Kapfer to recoup all principal paid on the mortgage of the marital home after the date of separation, and failed to award her attorney's fees. Because we agree that the circuit court erred in some of these matters, we reverse the circuit court.

After twenty-three years of marriage, Mr. and Mrs. Kapfer separated on October 29, 1986 and divorced on May 14, 1990 on the grounds of irreconcilable differences.[1] During the early course of the marriage Mrs. Kapfer worked as executive secretary, but in 1972 after the parties moved to West Virginia, Mrs. Kapfer became a full-time homemaker. The Kapfers have no children. Mr. Kapfer is a petroleum engineer who has worked for the same company since May 1967. In addition to the marital home, the parties' major asset consists of stock shares in the company for which Mr. Kapfer works.

The matter was heard by a family law master and her recommendations were adopted by Circuit Court of Harrison County. The circuit court awarded Mrs. Kapfer the following alimony: $2500 payable within 30 days of the order, $1200 per month for 6 months and thereafter $500 per month. Mrs. Kapfer was awarded one half of Mr. Kapfer's monthly pension benefit accrued to November 1, 1986 or about $411 per month with payments to commence in January 1992. The circuit court ordered that stock shares be divided equally but allowed Mr. Kapfer to select the stock shares to be transferred to Mrs. Kapfer. Although the circuit court ordered the marital home sold with net sale proceeds to be equally divided, Mr. Kapfer was to be reimbursed for all principal he paid on the mort-

---

1. Because the May 14, 1990 divorce order was entered without considering Mrs. Kapfer's exceptions to the recommended decision of the family law master filed on May 11, 1990, the circuit court after considering Mrs. Kapfer's exceptions adopted the recommended decision of the family law master on October 16, 1990.

gage after the date of separation. The circuit court also required each party to pay his or her own attorney's fees.

On appeal, Mrs. Kapfer alleges that the circuit court erred in its award of alimony, failed to classify and to evaluate certain property correctly, improperly awarded Mr. Kapfer credit for principal paid on the marital home's mortgage after the date of separation and failed to award Mrs. Kapfer her attorney's fees.

## I

Mrs. Kapfer alleges that the circuit court's award of alimony was inadequate because of insufficient current income information and that given her age and health, the circuit court erred in granting rehabilitative alimony.

*W.Va.Code,* 48–2–16(b)(3) [1984], requires that "[t]he present employment income and other recurring earnings of each

party from any source ..." be considered in determining the amount of alimony.[2] Although the parties separated on October 29, 1986, the hearing before the family law master was not held until February 14, 1989 and the circuit court finally adopted the family law master's recommendations on October 22, 1990. According to the record, Mr. Kapfer's income up to the first part of 1987 was the only employment income information available to the family law master and the circuit court. The record also contains Mr. Kapfer's pay stub for February 15, 1989; however, this information was not disclosed until a March 7, 1991 hearing before the circuit court.[3]

In addition to a salary, Mr. Kapfer apparently receives compensation from an employee stock option plan. In 1984 the parties' total income was $57,231.59; in 1985, the parties' total income jumped to $114,688 and in 1986, the parties' total income

---

**2.** *W.Va.Code,* 48–2–16(b) [1984], provides:

In cases where the parties to an action commenced under the provisions of this article have not executed a separation agreement, or have executed an agreement which is incomplete or insufficient to resolve the outstanding issues between the parties, or where the court finds the separation agreement of the parties not to be fair and reasonable or clear and unambiguous, the court shall proceed to resolve the issues outstanding between the parties. The court shall consider the following factors in determining the amount of alimony, child support or separate maintenance, if any, to be ordered under the provisions of sections thirteen and fifteen [§§ 48–2–13 and 48–2–15] of this article, as a supplement to or in lieu of the separation agreement:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and

their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

**3.** The March 7, 1991 hearing was held to consider Mrs. Kapfer's post-judgment, Rule 60(b), motion for relief.

was $96,257. Mr. Kapfer's 1989 pay stub indicated that his annual salary was about $64,000. Because Mr. Kapfer's income varied depending on the stock option plan, a complete disclosure of his income is necessary to determine what income is available for alimony. To the extent that the stock from the employee stock option plan is part of the assets for distribution, the value of the stock shares should not be considered as income in order to avoid duplication. *See infra* Section II.

█ Mrs. Kapfer also maintains that Mr. Kapfer's deferred compensation and credit union savings were not disclosed and were not considered in the determination of alimony. Although these voluntary deductions from Mr. Kapfer's income were specified in the record, the information was not current. Because of the lack of current financial information, we are unable to determine if the award of alimony is inadequate and we remand this case for further development of this issue.

█ Mrs. Kapfer also alleges that given her health and age, rehabilitative alimony should not have been granted. Although Mrs. Kapfer was awarded permanent alimony of $500 per month, she was also awarded rehabilitative alimony to pay for retraining ($2,500) and to support her during retraining ($1,200 per month for 6 months).[4] In Syllabus Point 3, *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984), we required a broad inquiry to be made concerning rehabilitative alimony:

> There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

*See Bettinger v. Bettinger*, 183 W.Va. 528, 542, 396 S.E.2d 709, 723 (1990).

In the present case the record shows that Mrs. Kapfer was trained and employed as an executive secretary; however, her last employment was in 1972 and she is now 51 years old. Mrs. Kapfer said she is willing to work and in 1989 estimated the cost of retraining to be $4,300 for a 10 month course.[5] Although Mrs. Kapfer is willing to return to employment, her desire and the award of some of the retraining costs do not automatically equal an employed person with a minimal need for support. In *Bettinger* at 542, 396 S.E.2d at 723, we noted that "[w]hile rehabilitative alimony may be ideally suited to a young spouse, it is less suited to an older person who may find his or her age a limitation in a skilled job market."

> " 'Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.' Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977)." Syllabus, *Luff v. Luff*, 174 W.Va. 734, 329 S.E.2d 100 (1985).

Syllabus Point 8, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990).

Given Mrs. Kapfer's age and health problems, we are not satisfied that the circuit court properly considered the award of rehabilitative alimony. In *Molnar*, we recognized that in an appropriate case the court should continue jurisdiction to reconsider the duration and amount of alimony. If on remand, the circuit court should decide that rehabilitative alimony is appropriate, the court should continue its jurisdiction to re-evaluate Mrs. Kapfer's employment status after retraining.

In summary, we reverse the circuit court's alimony award and remand the case to develop further the record on current

---

4. Effective January 1992, Mrs. Kapfer is to received $411 per month from Mr. Kapfer's pension plan.

5. In 1986 Mrs. Kapfer estimated the cost of retraining to be $2,500 for a 6 month course.

employment income and to reevaluate the rehabilitative alimony award.

## II

On appeal Mrs. Kapfer contends that the circuit court failed to classify and to evaluate certain property correctly. Specifically Mrs. Kapfer maintains that the 1985 Buick should have been classified as her separate property, that the future stock options should have been classified as marital property and that the stock shares were not evaluated.

In *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), we noted that under *W.Va.Code* 48–2–32 [1984], equitable distribution is a three step process: classification, evaluation and division. In the present case, Mrs. Kapfer raises two objections concerning the circuit court's classification of property, namely the classification of an automobile as marital property and the failure to classify certain future stock options.

■ In classifying property as separate or marital, the legislature has indicated a preference for classifying property as marital. In Syllabus Point 3, *Whiting*, we said:

> W.Va.Code, 48–2–1(e)(1) (1986), defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.

*In accord*, Syllabus Point 1, *Koontz v. Koontz*, 183 W.Va. 477, 396 S.E.2d 439 (1990).

■ First, Mrs. Kapfer contends that the 1985 Buick is her separate property because it was a present from her husband. Although the automobile was titled in Mrs. Kapfer's name only, Mrs. Kapfer said that she had selected the automobile in the same way that all the automobiles had been selected. Mr. Kapfer denied that the automobile was a gift to Mrs. Kapfer. Although one spouse can transfer property to the other spouse by irrevocable gift under *W.Va.Code*, 48–3–10 [1984], "[i]n all instances, the burden of proof is upon the spouse who would claim the gift." *Roig v. Roig*, 178 W.Va. 781, 785, 364 S.E.2d 794, 798 (1987). Based on the conflicting testimony, we find that the circuit court's decision that the automobile was marital property is not clearly wrong.

Second, Mrs. Kapfer alleges that the circuit court failed to classify certain employee stock options titled to Mr. Kapfer, thus omitting these options from the equitable distribution process. Mr. Kapfer disclosed that he, as of the date of separation, had the following stock options: (1) an option for 1125 shares with an acquisition date of April 4, 1988 and (2) an option for 750 shares with an acquisition date of March 13, 1991. Mr. Kapfer said that stock options were subject to forfeiture upon termination of his employment and the value was dependent on market price. Other than the brief information provided by Mr. Kapfer, the record is silent. Indeed, neither the family law master nor the circuit court classified these options.

■ Because these stock options were acquired during the parties' marriage, they should have been considered by the circuit court. Given the lack of information about the options, we are unable to determine what value they have, if any, and how much of that value should be considered marital property subject to equitable distribution. On remand the circuit court should further develop the record by expert testimony, if necessary, to determine the value of the options and how much of that value is marital property subject to equitable distribution.[6]

■ Third, Mrs. Kapfer argues that the circuit court erred in failing to evaluate the stock shares in the company for which Mr. Kapfer works that were acquired by the

---

**6.** Although we hesitated to dictate any specific method for evaluating and dividing these stock options because of a lack of information, the circuit court should follow the broad guidelines for distributing pension benefits found in Syllabus Point 5, *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987).

parties during the marriage.[7] Although the circuit court equally divided the stock shares with each party to receive 1,377 shares, the circuit court allowed Mr. Kapfer to select the shares to be transferred to Mrs. Kapfer. If the costs of acquiring the company's stock shares were equal, the stock shares could be treated as a fungible item. However, in the present case, the stock shares were acquired at different times with different costs ranging from $36 per share to $45.75 per share. Because the cost or other basis is used to determine the capital gain or loss for tax purposes, stock shares with different costs have different tax consequences, which need to be considered. Mr. Kapfer alleges that the circuit court allowed him to select the stock shares to be transferred because of a $5,100 tax he paid in 1986.[8] Other than Mr. Kapfer's allegation of a tax adjustment, the record does not show that the potential tax consequences for both parties were considered.

On remand, the circuit court should consider the tax consequences in determining the division of the stock shares. If necessary, an expert can be appointed to assist the court and if the stock shares are no longer available, any imbalance that resulted from the division can be corrected either by a lump sum payment or off-set from other available marital assets.

### III

On appeal, Mrs. Kapfer objects to the credit given to Mr. Kapfer for the principal he paid on the mortgage of the marital home between the date of separation and the date of sale. After the parties separated in 1986, Mr. Kapfer was required to pay the mortgage on the marital home in which Mrs. Kapfer continued to live until November 1990. As part of the final order, the circuit court ordered the marital home to be sold with the net proceeds to be equally divided after Mr. Kapfer was reimbursed for the principal he paid on the mortgage after the date of separation. Mrs. Kapfer agreed to the arrangement during the hearing before the family law master by saying "That's fine."[9]

*W.Va.Code,* 48-2-15(b)(4) [1991] allows the circuit court to require payments to third parties for charges necessary for the occupancy of the marital home, but provides that the circuit court can deem such payments to be "alimony, child support or installment payment for the distribution of marital property...." In Syllabus Point 1, *Sly v. Sly,* 187 W.Va. 172, 416 S.E.2d 486 (1992), we said:

> *W.Va.Code,* 48-2-15(b)(4) [1991] provides that if the circuit court, upon ordering a divorce, requires payments to third parties in the form of home loan installments, land contract payments, rent, payment for utility services, property taxes, insurance coverage, or other expenses reasonably necessary for the use and occupancy of the marital domicile, those payments shall be deemed to be alimony, child support or installment payments for the distribution of marital property in such proportion as the circuit court may direct. *W.Va.Code,* 48-2-15(b)(4) [1991] further provides that if the circuit court does not set forth in the order that a portion of such payments are deemed to be child support or installment payments for the distribution of marital property, then all such payments shall be deemed to be alimony.

In the present case, the parties agreed to allow Mr. Kapfer to recoup from the sale all mortgage principal he paid on the marital home after the date of separa-

---

7. Mrs. Kapfer also questions the circuit court's evaluation of the automobile and the household furnishings. However the argument is not developed and given the conflicting evidence, we find that the circuit court did not abuse his discretion in valuing these items. *See* Syllabus Point 1, *Bettinger supra.*

8. The only information in the record that noted the parties' tax liability for stock transactions in

1986 was the parties' 1986 Federal tax return, which listed $199 in income based on 40% of the capital gain distributions.

9. On appeal Mrs. Kapfer contends for the first time that if Mr. Kapfer recoups principal paid after the date of separation, she should be allowed to recoup maintenance expenses.

tion and the circuit court's order sets forth the parties' agreement. Given the parties' agreement, we find no abuse of discretion in allowing Mr. Kapfer to recoup from the net proceeds of the sale of the marital home the principal he paid after the date of separation.

## IV

 Finally, Mrs. Kapfer argues that the circuit court erred in not requiring Mr. Kapfer to pay her attorney's fees, which amounted to $2,100 at the hearing before the family law master. *W. Va. Code,* 48–2–13(a)(4) [1986], states that "[t]he court may compel either party to pay attorney's fees and court costs reasonably necessary ... to prosecute or defend the action in the trial court." In Syllabus Point 14, *Bettinger, supra,* we stated "[t]he purpose of W.Va.Code, 48–2–13(a)(4) (1986), is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees during the course of the litigation."

In the present case, the circuit court required each party to pay his or her own attorney's fees because the marital assets were substantial, indeed each party receives 1377 shares of stock that sells for about $40 per share. Based on these assets, we agree with the circuit court's decision that reimbursement of attorney's fees was not necessary to enable Mrs. Kapfer "to prosecute or defend the action in the trial court." *W. Va. Code,* 48–2–13(a)(4) [1986].

However, on remand, the circuit court should again examine the issue of attorney's fees because of the additional fees and costs that have accrued on appeal and that will accrue on remand. In determining if Mr. Kapfer should be required to pay a portion of the additional fees and costs, the circuit court should consider the fact that several of the assignments of error occurred because Mr. Kapfer failed to present evidence of his current income and failed to provide information about the unequal tax treatment of the stocks.

Because we find merit in Mrs. Kapfer's assignments of error concerning alimony,

and classification and evaluation of marital property, the judgment of the circuit court is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.