428 S.E.2d 547

**Phyllis J. MILLER, Plaintiff Below, Appellant,**

v.

**Charles L. MILLER, Defendant Below, Appellee.**

No. 21411.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Decided March 12, 1993.

James Paul Geary, II, Petersburg, for appellant.

William H. Bean, Moorefield, for appellee.

PER CURIAM:

This case is before this Court upon an appeal from the February 3, 1992, order of the Circuit Court of Pendleton County, West Virginia. The circuit court granted the parties a divorce based upon the grounds of irreconcilable differences. The appellant, Phyllis J. Miller, raises three issues on appeal: (1) the 204.5 acre farm acquired during the marriage in the name of the appellee, Charles L. Miller, should be considered marital property subject to equitable distribution; (2) the marital dwelling on the 204.5 acre farm should also be considered marital property subject to equitable distribution; and (3) the appellant should not be required to pay to the appellee a lump-sum rehabilitative alimony award in the amount of $2,400.00. This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the judgment of the circuit court is affirmed, in part, and reversed, in part.

I

The parties were married on September 29, 1961. Shortly thereafter, the couple moved into a house on a farm in Pendleton County, West Virginia, then owned by the appellee's parents. There were two boys born to this marriage and at the time of the

divorce, the youngest son was twenty-five years old and the oldest son was twenty-nine years old.

The farm where the family lived contained 204.5 acres. The appellee's parents did not charge the couple rent from September 29, 1961, the date they moved into the home, until October 18, 1974, the date the appellee's mother, Lillian Miller, deeded the house and farm land to the appellee. The conveyance was given by Lillian Miller to the appellee in consideration of the love and affection that the appellee's mother held for her son.

During the marriage, many improvements were made to the structures on the property, including the house. For example, a new kitchen, garage and bathroom were built, as well as the addition of a septic system, water system, a new furnace, storm windows and doors, sliding doors, floors, carpeting, paneling, and a new ceiling and tile. Other improvements were made to the roof and exterior of the house and new outbuildings were constructed. The house was appraised at $50,500.00, and the entire farm, including the house, was appraised at $147,600.00.

During the later part of the marriage, the appellee was not engaged in any sort of remunerative work except for occasionally working on vehicles for people at the house. The appellee claims to have a variety of health problems which precluded him from obtaining gainful employment. He repeatedly filed for and was denied Social Security disability benefits.[1]

Throughout the marriage, the appellant held various jobs as well as working as a homemaker. The money earned by the appellant went to pay the bills and support the family. The appellant also participated in the decisions regarding the farm and the house.

The parties continued to live together in the house until November of 1990, when the appellant separated from the appellee and moved to Petersburg, West Virginia.

## II

The appellant sought a divorce from the appellee and filed the complaint in the Circuit Court of Pendleton County, West Virginia, on November 26, 1990. The appellee answered the complaint admitting irreconcilable differences existed between the parties. The appellee also filed a counterclaim against the appellant requesting reasonable alimony based upon the appellee's inability to hold gainful employment due to his physical disabilities. Subsequently, the appellant filed an answer.

Evidentiary hearings were held on September 30, 1991, and November 12, 1991. On December 11, 1991, the family law master filed his recommended decision. The family law master, in his findings of facts and conclusions of law, determined that the real estate belonged to the appellee as his sole and separate property, because it was given to him by his mother. Further, the family law master found that the appellant should be awarded one-half of the value of the improvements made to the real estate; however, the appellant was denied any award for improvements made to the house, because she failed to introduce competent evidence to prove the value of the improvements made to the house. The family law master also recommended that the appellant be awarded the majority of the household furniture and appliances with the remainder of the personal property to be sold at a public auction to satisfy payment of marital debts, with the balance to be divided between the parties. Finally, the family law master recommended that the appellee receive $2,400.00 in a lump sum rehabilitative alimony award.

Each party took exceptions to the recommended decision. On February 3, 1992, a hearing on these exceptions was held before the circuit court judge. The exceptions were denied, and the court entered the recommended decision of the family law master.

It is from the February 3, 1992 order of the circuit court that the appellant appeals to this Court.

---

1. The appellee admitted in his response brief before this Court that he was subsequently awarded Social Security Disability benefits after the divorce became final.

## III

The first issue raised by the appellant is that the 204.5 acre farm acquired during the marriage is marital property subject to equitable distribution.

■ The appellant argues that the farm is marital property, because it was acquired during the parties' marriage, and due to the expenditure of marital funds, the property increased in value. *W.Va.Code*, 48–2–1(e)(1) & (2) [1992]. In further support of her contention, the appellant argues that the appellee has failed to prove that the transfer of the real estate was a gift.

■ It is a well-established principle, as the appellant correctly points out, that the burden of establishing an inter vivos gift rests on the party claiming that there has been a gift. *Brewer v. Brewer*, 175 W.Va. 750, 752, 338 S.E.2d 229, 232 (1985), citing *Dickeschied v. Exchange Bank, et al.*, 28 W.Va. 340, 360 [1886]. However, the appellee has met his burden in this case. In *Brewer*, we recognized the three general requirements that must be met to have a valid inter vivos gift: (1) there must be an intention on the part of the donor to make a gift; (2) there must be a delivery or transfer of the subject matter of the gift; and (3) there must be acceptance by the donee. The elements for an inter vivos gift have been met in that the donor, the appellee's mother, set forth her intent by stating in the deed that consideration was love and affection; next, there was a delivery or transfer of the property in that the appellee's mother signed the deed and duly recorded it in the Pendleton County Clerk's office on October 18, 1974; and finally, the appellee signified his acceptance by continuing to reside on the property.

Because this burden was met, a plain reading of the statute clearly supports the circuit court's ruling. Pursuant to *W.Va. Code*, 48–2–1(f)(4) [1992], separate property is property acquired by a party during marriage by gift, bequest, devise, descent, or distribution. "Separate property is exempted from division under the State's equitable distribution statute." *Shank v. Shank*, 182 W.Va. 271, 274, 387 S.E.2d 325, 328 (1989).

■ As an alternative argument, the appellant asserts that the improvements made to the property have increased the value of the separate property and would make the property marital rather than separate. In *W.Va.Code*, 48–2–1(e)(2) [1992], marital property is defined as:

> the amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage.

Improvements were made in the form of new structures being built or improvements made to the existing structures on the land.

> In determining an appropriate amount for equitable distribution where there have been economic contributions made ..., it is necessary to consider the respective economic contributions made by both parties during the marriage as weighed against the net assets that are available at the time of the divorce. The term 'net assets' does not include assets ... obtained during the marriage by way of inheritance or gifts from third parties[.]

Syl. pt. 3, in part, *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983). The appellant introduced evidence of the value of the aforementioned improvements, and the family law master considered these improvement values in determining the total value of the property.

The evidence presented herein clearly supports the circuit court's finding that the 204.5 acre farm is the appellee's sole and separate property. We, therefore, affirm the ruling of the circuit court.

■ The appellant's second point of contention is that if the farm is considered the sole and separate property of the appellee, then the house is transmuted into marital property subject to equitable distribution.

As shown by the evidence, the house, situated on the farm which was deeded to the appellee by his mother, is not marital property. *See W.Va.Code,* 48–2–1(f)(4) [1992] and *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983). However, the increase in the value of the house which resulted from an expenditure of marital funds or work performed by either or both of the parties is marital property. *W.Va.Code,* 48–2–1(e)(2)(A) & (B) [1992].

As a general rule, "[w]hen the issue in a divorce proceeding is the equitable distribution of marital property, both parties have the burden of presenting competent evidence to the trial court concerning the value of such property." Syl. pt. 3, *Roig v. Roig,* 178 W.Va. 781, 364 S.E.2d 794 (1987). The appellant hired a real estate appraiser, Mr. Daniel W. Hope, to appraise the farm and the improvements thereon. Mr. Hope was able to reach an estimated value of the land and of the improvements made upon the land, except, he was unable to determine the separate value for the improvements made to the house. At oral argument, counsel for the appellant said he attempted to have the improvements separated and appraised individually, but the appraiser was unable to do so. Consequently, Mr. Hope's appraisal of the house represented the fair market value of the house including the improvements. Because the appellant was unable to provide sufficient evidence to prove the value of the improvements made to the house, the appellee was awarded the value of these improvements.

Transmutation, the theory upon which the appellant argues, is the legal process by which nonmarital assets, properties acquired by gift, bequest, devise or descent, may be converted to marital property. *See* syl. pt. 1, *Kuehn v. Kuehn,* 55 Ohio App.3d 245, 564 N.E.2d 97 (1988). "This transformation may be effected by an agreement between the parties or by the affirmative act or acts of the parties." *Westbrook v. Westbrook,* 5 Va.App. 446, 364 S.E.2d 523, 528 (1988). For example, "a transmutation occurs when the contributing spouse evidences his intent to make a gift of the nonmarital property to the marriage by significantly changing the character of the property to marital." *In re Marriage of Nicks,* 177 Ill.App.3d 76, 126 Ill.Dec. 442, 444, 531 N.E.2d 1069, 1071 (1988). In the case before us, however, there was no agreement effected between the parties, nor was there evidence of any intent by the appellee to change the character of the property. For instance, the appellee did not transfer title of his separate property in the joint names of both parties. *See Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990).

In the instant case, the appellee failed to offer any evidence on the value of the improvements made to the house, but to testify that they were in a poor state of repair. Yet, the appellant attempted to introduce evidence of the appropriate values of the improvements, but it is obvious that the real estate appraiser was unable to provide the necessary information.

Based upon the fact that the appellant was unable to meet her burden of presenting competent evidence regarding the value of the improvements made to the house during the parties' marriage, we find that the circuit court was correct in denying the appellant one-half of the same. It is evident that the real estate appraiser could not separate out the improvements and appraise them separately due to the deterioration of the conditions. It should be noted that the appellant was awarded a majority of the household furnishings and various other personal items. However, the house and the improvements made therein shall remain the appellee's separate property.

The final issue before us is the appellant's contention that she should not be required to pay the appellee a $2,400.00 lump-sum rehabilitative alimony award. It is well recognized that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977). We are

unable to find a detailed inquiry in the record with regard to the appellee's ability to engage in remunerative work, and therefore, we believe the circuit court abused its discretion in awarding the appellee $2,400.00 in a lump-sum rehabilitative alimony award.

■ We addressed the idea of rehabilitative alimony in syllabus point 1 of *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984): "The concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." Rehabilitative alimony has been used when a younger, dependent spouse enters a marriage with marketable skills but then deteriorate through lack of use, or the dependent spouse is capable of becoming self-supporting through academic study or training.

There are three broad inquires that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

Syl. pt. 3, *Molnar v. Molnar, supra.* With regard to the first inquiry, the couple was married for over thirty years, the appellee has limited transferrable skills, and as the appellee testified, he is in poor health. Second, even though the appellant is currently employed at Sears, her financial well-being at this time is questionable. The third factor, the continuing jurisdiction of the court to modify a rehabilitative alimony award, is ordinarily left to the sound discretion of the trial court.

As the appellant points out, the appellee has failed to demonstrate how he could be rehabilitated. *See Molnar v. Molnar, supra.* "While rehabilitative alimony may be ideally suited to a young spouse, it is less suited to an older person who may find his or her age a limitation in a skilled job market." *Bettinger v. Bettinger*, 183 W.Va. 528, 542, 396 S.E.2d 709, 723 (1990). The appellee's age, 58, his deteriorating state of health and lack of transferrable skills make him a poor candidate for rehabilitative alimony. In his brief, the appellee even admits he is able to support himself through monthly income he now receives from Social Security disability benefits.

Based upon a lack of evidence to justify a rehabilitative alimony award, we are of the opinion that the circuit court abused its discretion, and we reverse the circuit court's ruling.

Accordingly, we find that the circuit court was correct in its holding that the 204.5 acre farm acquired during the marriage in the name of the appellee is the appellee's sole and separate property. We further affirm the circuit court's ruling that the marital dwelling located on the 204.5 acre farm is the appellee's sole and separate property. The improvements made to the house are marital property and are subject to equitable distribution. However, due to the fact that the appellant was unable to meet her burden of presenting competent evidence regarding the value of the improvements made to the house during the parties' marriage, we find that the circuit court was correct in denying the appellant one-half of the same. In conclusion, we reverse the decision of the circuit court insofar as we find that the court abused its discretion in awarding the appellee $2,400.00 in a lump-sum rehabilitative alimony award.

For the foregoing reasons, the judgment of the Circuit Court of Pendleton County is reversed, in part, and affirmed, in part.

Affirmed, in part, reversed, in part.