IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**March 13, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ARTHUR R. POFF,**
**Petitioner Below, Petitioner**

**v.) No. 23-ICA-165   (Fam. Ct. of Nicholas Cnty. Case No. FC-34-2021-D-65)**

**PAMELA A. POFF,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Arthur Poff ("Husband") appeals the March 29, 2023, order of the Family Court of Nicholas County, which found that the former marital residence was the separate property of Respondent Pamela Poff ("Wife").[1] The issue on appeal is whether the family court erred by finding that the home was a gift to Wife and not subject to equitable distribution.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that the family court erred in failing to set forth findings of fact and conclusions of law sufficient to allow meaningful appellate review. Therefore, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to reverse the family court's order and remand the case to family court with instructions to draft a new order setting forth findings of fact and conclusions of law sufficient for meaningful appellate review.

Husband and Wife were married for twenty-nine years and divorced by Bifurcated Divorce Order entered on March 22, 2022. During the marriage, the parties built a home in Summersville,[2] and a deed was placed in both parties' names with rights of survivorship at the time of its purchase in 1997.

---

[1] Husband is represented by Christine B. Stump, Esq., and Wife is represented by Jared S. Frame, Esq.

[2] The parties operated a successful construction business for decades prior to 2020 where Husband was the contractor and Wife handled the paperwork as Secretary and office manager.

In 2020, Husband became severely ill. According to their testimony, Husband and Husband's daughter believed he would not survive.[3] He contacted and hired an attorney to draft a quitclaim deed to convey his interest in the marital home to Wife in case something happened to him.[4] On July 1, 2020, Husband executed the quitclaim deed to Wife and recorded it at the courthouse on the same day. Approximately nine months later, Husband filed for divorce.

Wife continued to live in the house after Husband filed for divorce and sought to purchase Husband's interest in the home. However, since the home was never appraised, Husband filed a Motion to Compel the Sale of the Marital Residence which was scheduled to be heard before the family court on November 9, 2022.

During the November 9 hearing, Wife asserted that the home may be her separate property due to the quitclaim deed executed by Husband. On November 18, 2022, the family court entered a temporary order requiring a market analysis of the home to determine its fair market value. The order further mentioned a hearing would need to be scheduled on whether the home was Wife's separate property. If the home were deemed separate property, the marital estate would have had no significant assets.

On November 22, 2022, Wife filed a motion to classify the home as her separate property due to the quitclaim deed. The family court held final hearings on Husband's motion to compel the sale of the home and Wife's motion to classify the home as her separate property on December 22, 2022, and January 26, 2023. The court heard testimony from Husband, Wife, and one of Husband's daughters.[5] Husband testified that he was of sound mind when he (1) employed counsel to prepare the quitclaim deed; (2) executed the deed; and (3) personally delivered the deed to be recorded.

However, he further testified that he did not intend for the conveyance to be a "gift" to Wife. Rather, he wanted Wife to solely own the home to prevent his daughters from his previous marriage from obtaining an interest in it. He testified that due to his sickness and Wife pressuring him to execute a quitclaim deed, he was under duress. Conversely, Wife testified that they had never discussed a quitclaim deed, but Husband told her that he wanted to make sure she solely owned the home so she and their daughter would inherit it.

---

[3] According to Husband, Wife also believed that he was going to die, but her testimony was that although Husband had been in the hospital with flu, that he was feeling better. She did not recall him losing one hundred pounds as he claimed.

[4] The home was free and clear of any lien or mortgage.

[5] The parties have one daughter together; however, the daughter who testified is from Husband's previous marriage.

His daughters from his first marriage had never lived in the home and he wanted to be sure that they would have no interest in it.

All testimony revealed that Husband's illness was severe. However, there was no testimony from anyone, including Husband, that suggested he was prevented from exercising his free will, was threatened, or unaware of what he was doing when he executed the deed on July 1, 2020. In fact, Husband's testimony was that he was of sound mind when he executed the deed, but obviously very ill.

Both parties initially identified the marital residence as marital property when they filed their financial statements during the divorce, but Wife later amended her statement to describe the marital residence as her separate property. Husband notes that Wife never questioned the nature of the marital residence as marital property until after he filed his Motion to Compel Sale of the Marital Residence. Wife argues that she amended her financial statement when she realized that the marital residence was actually her separate property.

At the end of the hearing on January 26, 2023, the Family Court directed the parties to submit memoranda in support of their respective positions. Both parties submitted their memoranda on February 27, 2023. In his memorandum, Husband argued that his interest in the marital residence was held by Wife as a constructive trust pursuant to *Patterson v. Patterson*, 167 W. Va. 1, 277 S.E.2d 709 (1981), overruled on other grounds, *LaRue v. LaRue*, 172 W. Va. 158, 304 S.E.2d 312 (1983), because of duress and unjust enrichment. In her memorandum, Wife argued that she had met her burden under *Roig v. Roig*, 178 W. Va. 781, 364 S.E.2d 794 (1987) to establish that Husband's interest in the marital residence had been transferred to Wife as an irrevocable gift.

By final order entered on March 29, 2023, the family court found the current value of the home to be between $500,000 and $600,000 and that the quitclaim deed was intended as a gift from Husband to Wife, thus deeming the home as Wife's separate property and not subject to equitable distribution. This appeal followed.

> In reviewing a final order of a family court judge that is appealed directly to this Court, we review findings of fact by a family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl. Pt. 1, *May v. May*, 214 W. Va. 394, 589 S.E.2d 536 (2003); *accord* W. Va. Code § 51-2A-14 (c) (2005) (specifying standards for appellate court review of family court orders).

3

On appeal, Husband raises three assignments of error: (1) that the Family Court erred in finding that Husband gifted his interest in the marital residence to Wife; (2) that the Family Court erred in failing to find that the former marital residence was held as a constructive trust as marital property under *Patterson v. Patterson*, 167 W. Va. 1, 277 S.E.2d 709 (1981) on the grounds of duress and unjust enrichment; and (3) that the Family Court erred in allegedly holding that Husband had to prove that he was not of sound mind in order to prevail on his argument that the former marital residence had not been gifted to Wife. We will consider the first and third assignments of error together because they are related. Because we are reversing and remanding for further development on the question of intent, we do not reach the question of constructive trust, which Wife contends was not timely raised in the lower court.[6]

The primary issue on appeal is whether the marital residence should be treated as marital or separate property. Wife contends that Husband validly gifted his interest in the marital residence, thereby converting it from marital to separate property which would not be subject to equitable division. For purposes of marital distribution, the spouse claiming that property has been gifted to him or her by the other spouse during their marriage has the burden of proving a valid gift. *Roig v. Roig*, 178 W. Va. 781, 785, 364 S.E.2d 794, 798 (1987). W. Va. Code § 48-29-201 (2001) provides:

> The burden of proof in any proceeding questioning the validity or lawfulness of any conveyance or transfer of property or any interest in property from one spouse to the other spouse by the spouse making the conveyance or transfer, or his or her heir, devisee or creditor is on the spouse in whose favor the conveyance or transfer was made.

*See also* W. Va. Code § 48-29-202 (2001) ("in the case of an action … wherein the court is required to determine what property of the parties constitutes marital property and equitably divide the same, the presumption [of a gift] created by this section does not apply, and a gift between spouses must be affirmatively proved."); *see generally* Syl. Pt. 4, *Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999) (holding that the party seeking to exclude property from the marital estate that is presumptively marital property has the burden of persuasion on that issue for purposes of equitable distribution).

In this case, the lower court did not discuss the Wife's burden of proof or even cite the statutes and cases imposing that burden of proof. Although it noted some testimony by Wife that she was surprised when Husband "presented her with the quitclaim deed," it did not mention that there was conflicting testimony by the Husband that she had repeatedly

---

[6] The lower court did not address in its order the issue of constructive trust based on duress and unjust enrichment. Generally, we do not address questions which were not decided by the lower court.

asked him to prepare the deed in order to make sure that she would receive the property if he predeceased her,[7] or state that it found the Wife's testimony to be more credible. Nor did it discuss the circumstances that the marital residence was the only significant asset of the marital estate,[8] that Wife was younger, healthier, and had more formal education than Husband, that both parties continued to live in the marital residence following the execution and recording of the quitclaim deed, that both parties initially identified the marital residence as marital property in their financial statements, that neither party had reported the transfer of title as a gift, or that Husband had paid half of the taxes on the property one year after filing for divorce.[9] "[T]o show intent at the time of the transaction in question the parties are entitled to rely on all the attendant facts and circumstances of the transaction. Thus, intent may be shown by evidence of any relevant fact and statement of the parties not barred by the hearsay rule." *Burnside v. Burnside*, 194 W. Va. 263, 272, 460 S.E.2d 264, 273 (1995).[10]

When a court determines whether property is separate or marital for purposes of equitable division, it is required to make sufficient findings of fact and conclusions of law

---

[7] According to Husband's testimony, Wife also asked him to prepare a will leaving everything to her, and when he went to get the will, Wife took him by the elbow and told him where to sign. In *Emma S. v. Joe W.*, No. 22-ICA-127, 2023 WL 2863287, at *3 (W. Va. Ct. App. April 10, 2023) (memorandum decision), this Court found it relevant to the question of the husband's donative intent that the wife had asked him to prepare a deed transferring his interest in his separate property to her, allegedly for the purpose of bundling insurance.

[8] *See Richardson v. Richardson*, No. 19-0862, 2020 WL 7222720, at *3 (W. Va. Dec. 7, 2020) (memorandum decision) (noting, among other things, that the marital residence "was the parties' major asset" in affirming a ruling by the lower court that the wife had "failed to meet her burden of proof that [the husband] intended to convey all of his interest in the marital home to her…").

[9] According to Husband, he was requested by Wife's counsel to pay half the taxes on the marital residence.

[10] In Paragraph 11 of its order, the lower court noted "that [Husband] had acquired the services of an attorney to prepare the quit claim deed and would have had the opportunity to seek that attorney's advice regarding the effect of such deed." Although we do not know what advice, if any, Husband may have received, we recognize that in confidential relationships of trust, such as husband and wife, whether the party claiming to be disadvantaged by a property transaction had independent advice "may be a significant factor in a court's evaluation of the overall bona fides of the transaction." *Charlton v. Charlton*, 186 W. Va. 670, 675, 413 S.E.2d 911, 916 (1991), quoting Syl. Pt. 3, *Marshall v. Marshall*, 166 W. Va. 304, 273 S.E.2d 360 (1980).

5

to permit effective appellate review. *See* Syl. Pt. 3, *Stuck v. Stuck*, 218 W. Va. 605, 625 S.E.2d 367 (2005) (per curiam) (absent a joint stipulation or property settlement agreement, the family court "is required to make findings of fact and conclusions of law… which reflect each step of the equitable distribution procedure."); *see generally* W. Va. Code § 48-7-106 (2001) ("In any order which… determines the ownership… of any property, … the court shall set out in detail its findings of fact and conclusions of law…"). Accordingly, we reverse and remand the final order of the lower court for further proceedings consistent with this opinion so that it may analyze the evidence in relation to the applicable burden of proof[11] and make more detailed findings of fact and conclusions of law in order to facilitate our review. In remanding this matter for further consideration and development, we note some general principles concerning property transfers which the lower court should consider and address in its analysis.

In order "to have a valid *inter vivos* gift three requirements must be met: (1) there must be an intention on the part of the donor to make a gift; (2) there must be a delivery or transfer of the subject matter of the gift; and (3) there must be acceptance of the gift by the donee." *Brewer v. Brewer*, 175 W. Va. 750, 751-52, 338 S.E.2d 229, 231 (1985) (per curiam). In this case, Husband argues that Wife failed to prove that he possessed the requisite intent to make an irrevocable gift of his interest in the marital residence.

In arguing that there was a valid gift to her, Wife relies on a quitclaim deed executed and recorded by Husband which purported to convey all his interest in the marital residence to Wife. Of course, the existence of such an instrument, although relevant, is not conclusive between spouses when it comes to the ownership of property. *See Richardson v. Richardson,* No. 19-0862, 2020 WL 7222720 (W. Va. Dec. 7, 2020) (memorandum decision) (affirming decision by lower court that marital residence was marital property despite husband's deed purporting to convey all his interest in the jointly owned property to wife); *Burgess v. Burgess*, 710 P.2d 417, 421 (Alaska 1985) (marital residence held to

---

[11] We do not find Husband's argument that the lower court changed the burden of proof to require him to prove that he was not of sound mind when he executed his quitclaim deed persuasive. The lower court noted in its order that there had been no evidence that the Husband was not of sound mind when he executed and recorded his quitclaim deed. Based on this language in the order, Husband argues that the lower court improperly required him to prove that he lacked the mental capacity to make a valid gift. This argument misses the mark. Although mental capacity is necessary, it is not sufficient to establish the existence of a valid gift. Other elements are required, and gifts may be set aside for other reasons than lack of mental capacity, such as lack of donative intent, fraud, duress, mistake and unjust enrichment. In this case, the lower court did not require Husband to prove that he was not of sound mind in order to prevail, and therefore did not change the usual burden of proof in cases involving alleged spousal gifts.

be marital property despite quitclaim deed by wife), cited with approval by *Charlton v. Charlton*, 186 W. Va. 670, 675, 413 S.E.2d 911, 916 (1991).

The mere fact that property is titled in a single spouse's name does not necessarily mean that it was meant to be separate, rather than marital, property. *See Kapfer v. Kapfer*, 187 W. Va. 396, 419 S.E.2d 464 (1992) (per curiam) (given conflicting evidence regarding husband's donative intent, the fact that an automobile was titled in the wife's name did not mean that the lower court had to conclude that it was her separate property); *Loudermilk v. Loudermilk*, 183 W. Va. 616, 397 S.E.2d 905 (1990) (garage adjoining marital residence was marital property despite deed purporting to convey wife's interest in lot to husband); *Emma S. v. Joe W.*, No. 22-ICA-127, 2023 WL 2863287 (W. Va. Ct. App. April 10, 2023) (memorandum decision) (deed conveying husband's interest in separate real property to wife, at wife's request, shortly before divorce, purportedly for purpose of bundling insurance, held invalid); *see generally Fry v. Fry*, No. 22-ICA-47, 2023 WL 1463353, at *3 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision) (" . . . titling of the property, either sole or joint, alone is not determinative of the nature of the property." . . . "Classification of the marital home as marital property or separate property is determined on a case-by-case basis . . . based on the intent and conduct of the parties.") (citations omitted); *Koontz v. Koontz,* 183 W. Va. 477, 484, 396 S.E.2d 439, 446 (1990) (Neely, J., dissenting) ("Bare legal title should not be determinative of what constitutes marital property…. Our refusal to consider the title of property as conclusive proof of . . . ownership . . . is consistent with our holdings in other areas."); *Roig v. Roig*, 178 W. Va. 781, 785, 364 S.E.2d 794, 798 (1987) ("when real property… [is] at stake, it requires considerably more than the simple fact that property was transferred from one spouse to the other to establish a qualified… gift."); Robin J. Davis, "*Alimony and Equitable Distribution: Are the Two Concepts Commingled in West Virginia?*" 95 W. Va. L. Rev. 469, 486 (Winter 1992/1993) ("… according to the West Virginia Code, marital assets are classified as marital property or separate property based on how and when the property was acquired, as opposed to its title.").

As the court explained in *Jonathan R. v. Katie R.*, No. 15-0400, 2016 WL 1735265 (W. Va. April 29, 2016) (memorandum decision),

> **the intent of [the] donor ... is not unqualifiedly determined by the formalities which were carried out by the donor.** Surrounding circumstances, including the conduct of the parties both prior and subsequent to the transaction in question, their testimony and the testimony of disinterested persons, the abilities and contributions of the parties, their relation to and confidence in each other, and any other factors which might throw light upon their true intent under the circumstances of the particular case must be scrutinized[.]

7

*Id*. at *4 quoting *Apt. v. Birmingham*, 89 F. Supp. 361 (N.D. Iowa 1950) (emphasis added).

In *Stuck v. Stuck*, 218 W. Va. 605, 625 S.E.2d 367 (2005) (per curiam), the Supreme Court of Appeals of West Virginia recognized that the existence of a deed did not preclude the need to consider evidence concerning the donor spouse's intent. *Stuck v. Stuck* is similar to the present case in that the husband testified that he had executed a deed to make sure that his spouse would have a place to live in case he predeceased her, and not to make a gift of interest in the marital residence to his wife. In that case, the husband executed a deed placing the marital residence, which was his separate property, in both his and his wife's names as joint tenants with right of survivorship. The husband argued that:

> in executing the deed he did not intend to make the property a gift to the marital estate. Rather, the deed was only intended as a probate instrument in the event that he died while married to Ms. Duncan. He wanted her to have a place to live if he passed away first, and he believed Ms. Duncan would provide that upon her death, the property would be inherited by his daughters.

*Id*. at 608, 625 S.E.2d at 370. The family court in *Stuck v. Stuck* held that a valid gift had been made without even considering any evidence concerning the husband's intent, and the circuit court refused to hear an appeal.

On appeal, the Supreme Court of Appeals of West Virginia rejected the argument that the language of the deed was controlling and remanded the case for further proceedings concerning the issue of the husband's intent. In its opinion, the Court reasoned that:

> The family court … concluded that even if Mr. Stuck had intended to only transfer the property so that Ms. Duncan would have a place to live should he pass away first, that absent some limitation to that effect in the deed, the real estate had to be deemed marital property. In other words, regardless of Mr. Stuck's intent, the property was part of the marital estate because the deed specified that the property was owned by the parties jointly with the right of survivorship. Clearly, the family court misapplied the law and erred by not considering Mr. Stuck's intent.

*Id*. In this case, the lower court apparently relied on the quitclaim deed executed by Husband with little or no real analysis of the evidence concerning whether he intended to gift his interest in the property to Wife. Accordingly, we reverse and remand for more

detailed findings of fact and conclusions of law pertaining to the evidence adduced in this case.[12]

Upon remand, if the lower court concludes, after analysis of the evidence and applicable law, that Husband intended to give his interest in the marital residence to Wife, thereby converting the marital residence from marital property to her separate property, it will need to determine whether that property retained its status as separate property or whether it was converted back into marital property as a result of the subsequent treatment and use of the property. *See Vance v. Vance*, 180 W. Va. 63, 375 S.E.2d 427 (1988) (per curiam); *Fry v. Fry*, No. 22-ICA-47, 2023 WL 1463353, at \*1 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision). The legal process of converting separate property into marital property is known as "transmutation." *Miller v. Miller*, 189 W. Va. 126, 130, 428 S.E.2d 547, 551 (1993) (per curiam). Most commonly, transmutation occurs when one spouse expressly conveys some interest in the property, but property can also change its nature because of other actions by the spouses. *See id*. ("This transformation may be effected by an agreement between the parties or by the affirmative act or acts of the parties."); *Burnside v. Burnside*, 194 W. Va. 263, 266, n.3, 460 S.E.2d 264, 267, n.3(1995) ("Transmutation is the conversion of separate property into marital property during the marriage by express or implied acts. Courts have held that transmutation can occur by title, by express or implied agreement, by commingling of funds, or by interspousal gift."). In this case, Husband and Wife continued to live in the marital residence after the alleged gift, and Husband paid some of the taxes following separation. Living in the marital residence is a key factor that may be considered in determining whether transmutation has occurred. *See Koontz v. Koontz*, 183 W. Va. 477, 483, 396 S.E.2d 439, 445 (1990) (Neely, J., dissenting).

We also note that "West Virginia case law generally indicates a marked preference for characterizing the property of married persons as marital." *Richardson v. Richardson*, No. 19-0862, 2020 WL 7222720, at \*3 (W. Va. Dec. 7, 2020) (memorandum decision). *See also* Syl. Pt. 2, *Kapfer v. Kapfer*, 187 W. Va. 396, 419 S.E.2d 464 (1992) (per curiam) ("W.

---

[12] Husband's testimony indicated that he intended to convey his interest in the marital residence to Wife to prevent his daughters from a previous marriage from obtaining an interest in the property. This testimony was some evidence of an intent to make a gift to Wife. Husband's goal to make sure that Wife had a place to live could have existed regardless of whether he believed that his death was imminent or not, although the mistaken belief that he was not long for this world undoubtedly added an urgency to the conveyance that would not have been present otherwise. It may also be relevant that if Husband did not want to gift his interest in the marital residence to Wife, there were other ways to protect her and achieve his goal. For example, leaving the marital residence to her in his will (which he may have done), drawing up a deed to Wife reserving a life estate for himself, or using a transfer on death deed. Moreover, prior to Husband's quitclaim deed, the marital residence was reportedly jointly owned by Husband and Wife with right of survivorship.

Va. Code 48-2-1 (e) (1) (1986)… expresses a marked preference for characterizing the property of the parties to a divorce action as marital property."), quoting Syl. Pt. 3, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990).

The record on appeal does not indicate whether the parties made any improvements to the marital residence after it allegedly became Wife's separate property, but if there were, any increase in the value of separate property resulting from the expenditure of marital funds or the labor and efforts of either spouse would be marital property. W. Va. Code § 48-1-233 (2) (2001); *Miller v. Miller*, 189 W. Va. 126, 129-30, 428 S.E.2d 547, 550-51 (1993) (per curiam); Syl. Pt. 2, *Shank v. Shank*, 182 W. Va. 271, 387 S.E.2d 325 (1989). This may be an issue for the lower court to explore on remand depending on the evidence presented.

Accordingly, for the reasons set forth above, we reverse the final order of March 29, 2023, and remand this case to the Family Court of Nicholas County for further proceedings consistent with this decision.

Reversed and remanded with directions.

**ISSUED:** March 13, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear