397 S.E.2d 905

**Thomas A. LOUDERMILK**

v.

**Carol Maxine LOUDERMILK.**

No. 19367.

Supreme Court of Appeals of West Virginia.

July 12, 1990.

R. Joseph Zak, Charleston, for Thomas A. Loudermilk.

Lafe C. Chafin, Barrett, Chafin, Lowry & Hampton, Huntington, for Carol Maxine Loudermilk.

**NEELY, Chief Justice:**

We granted this appeal to determine whether the Circuit Court of Cabell County erred when it awarded legal custody to one parent but then allowed the other parent physical custody every other week plus child support of $145.68 per month to defray the cost of the visits. We find that this case is right on the border of our rule prohibiting court-ordered joint custody as set forth in Syllabus Point 8 of *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989), where we said:

> We do not authorize court ordered joint custody over the objections of a primary caretaker parent although parents may agree to such an arrangement.

Nonetheless, under the peculiar facts of this case we affirm the circuit court.

Thomas A. Loudermilk was forty-eight years old when this divorce action was instituted and was employed as a civil engineer for the U.S. Army Corp of Engineers. Carol Maxine Loudermilk was forty-three years old when the divorce was instituted and was employed as a staff accountant for a local accounting firm. The parties were married in 1964 and lived together until about October, 1987. One child, Andrew Thomas Loudermilk, who was four and a half years old at the time of divorce, was their only child. The parties sought and were granted a divorce on the ground of irreconcilable differences.

**I.**

■ The record indicates that Mr. Loudermilk, during the marriage, undertook substantial parenting responsibilities of the type normally associated with a primary caretaker. The evidence supports the circuit court's conclusion that during the marriage Mr. Loudermilk performed many of the household maintenance and child care duties, plus providing the largest share of the family's income. Mrs. Loudermilk similarly undertook household maintenance and child care responsibilities and held down a regular job. Although Mr. Loudermilk asserts that he was the primary caretaker, we conclude that the family law master and circuit court were correct in finding that in this family there was no single primary caretaker parent as defined in Syllabus Point 3 of *David M. v. Margaret M., supra.*[1] Both the law master and circuit

---

1. Syllabus Point 3 of *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989), says:
The "primary caretaker" is the parent who has taken primary responsibility for, *inter alia*, the performance of the following caring and nurturing duties of a parent: (1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. trans-porting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e. religious, cultural, social, etc.; and, (10) teaching elementary skills, i.e., reading, writing and arithmetic.

court found that parenting duties were shared and that both parents are fit custodians.

■ The court concluded that the best interests of the child would be served by awarding legal custody to Mr. Loudermilk with very liberal visitation rights to Mrs. Loudermilk. The court's award of legal custody in one parent, namely Mr. Loudermilk, solves the problem that we discussed in *David M. v. Margaret M., supra*, where we said:

> Furthermore, parents must constantly give permission for one thing or another. Who decides whether the child can have a driver's license at age sixteen? Who decides when the child can date, under what conditions, and with whom? When the parents violently disagree—and particularly when they disagree because there are continuing fights left over from the marriage—the child is likely to be left hopelessly confused as the parents are played off one against the other.

*Id.* 182 W.Va. at 71, 385 S.E.2d at 927. In the case before us, any disagreement concerning the school to which Andrew will go, or the wisdom of elective medical procedures, can be decided unilaterally by Mr. Loudermilk, thus avoiding the deadlock that is so often associated with court-ordered joint custody.

Mr. Loudermilk argues that the novel visitation arrangement in this case is simply "joint custody" by another name; in this regard, the arrangement does appear to fail the "duck test".[2] Nonetheless, there is a significant wrinkle to this case that makes it different from most other contested custody cases. Here, indeed, both the law master and the circuit court found that there was no primary caretaker parent as defined by *David M. v. Margaret M.* and earlier cases. Furthermore, at the time of the final order, the arrangement of shared physical custody had been in effect for nearly two years under an interim order and appeared to work more or less acceptably. In this regard, as we said in *David M. v. Margaret M.:*

> Joint custody works well when both parties live in the same neighborhood or at least in the same city, and so long as they can cooperate on child rearing matters.

*Id.* 182 W.Va. at 71, 385 S.E.2d at 927. In this case both parents live in the same small city where it is an easy commute from one neighborhood to another. There is no argument that schooling will be difficult or that the child will not have consistent relationships with friends his own age. Therefore, it was not an abuse of discretion to continue an arrangement that appears to have worked well, gave the child close contact with both parents, and did not confound the relationship between the child and an original primary caretaker because there is none in this case. We emphasize, however, that this is a narrow exception to our strong precedent disallowing involuntary joint custody, *See David M. v. Margaret M., supra,* and *Lowe v. Lowe,* 179 W.Va. 536, 370 S.E.2d 731 (1988).

■ Mr. Loudermilk complains that the award of $145.63 to Mrs. Loudermilk as "child support" is contrary to any legitimate notion that he is the child's legal custodian. Again, this ruling by the circuit court would appear to flunk the "duck test", but closer scrutiny reveals this novel decision was sound.

Mr. Loudermilk earns $24,029 a year, while Mrs. Loudermilk earns $13,017 a year. When the child is visiting Mrs. Loudermilk, the child is the second person in Mrs. Loudermilk's household, and because the visits to Mrs. Loudermilk constitute fifty percent of the child's life, there are substantial caretaking expenses attendant on these visits. Because both parents work full time, Andrew is placed in day care at a cost of $195 per month, which is an expense that inures equally to both Mr. and Mrs. Loudermilk. Were it not for day care, one parent would need to quit his or her job to stay home with the child. Thus the family law master and circuit court determined that the cost of day care should be shared equally between Mr. and Mrs. Loudermilk.

**2.** The duck test emerges from the old adage that if it walks like a duck, quacks like a duck, and looks like a duck, it is probably a duck.

The family law master determined the amount of support to which Andrew was entitled based upon a total family income of $37,046. The law master then apportioned that child support between the parties in proportion to their separate contributions to the total family income and determined that Mrs. Loudermilk came out $145.68 short per month based upon her need to care for the child fifty percent of the time. From that amount, however, Mrs. Loudermilk was expected to deduct her share of the child care expenses, which amounted to $97.50. This deduction leaves Mrs. Loudermilk $48.18 toward Andrew's food, clothes, and toys when Andrew visits her.

We have consistently recognized that questions relating to maintenance of the parties or to their children are within the sound discretion of the trial court and its rulings on such matters should not be disturbed on appeal unless there has been an abuse of discretion. *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982); *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). In this case we find no abuse of discretion, so the ruling of the circuit court is affirmed.

## II.

Mr. Loudermilk also complains about the circuit court's award to Mrs. Loudermilk of a half ownership in the garage lot adjoining the marital residence. The lot adjoining the marital residence was conveyed to both parties in 1966 as a gift by Mr. Loudermilk's grandmother. In 1974, however, the parties experienced marital difficulties, and the evidence supports the trial court's conclusion that Mrs. Loudermilk agreed to convey her interest in the lot to Mr. Loudermilk in exchange for a divorce. A deed was then prepared dated 12 November 1974. The deed remained unsigned until 11 June 1975, when again marital problems arose. Once again Mrs. Loudermilk agreed to, and this time did, execute the deed conveying to Mr. Loudermilk her interest in the lot upon condition that she be given a divorce.

The deed in question was not recorded, however, until twelve days before the separation of the parties in 1987. Thus, thirteen years passed between the time that the deed was executed and the time that the deed was recorded in the office of the Clerk of the County Commission of Cabell County. Although the lot in question came by gift from Mr. Loudermilk's grandmother, the lot was never Mr. Loudermilk's separate property. Mr. Loudermilk received a one half, undivided interest in the lot at exactly the same time that Mrs. Loudermilk received her one half undivided interest from the same grantor.

Mr. Loudermilk contends that he received a "gift" of the property from his wife by virtue of her valid deed of her interest to him in 1974. However, both the testimony of Mrs. Loudermilk concerning the circumstances under which she agreed to execute the deed and the circumstantial evidence of recordation of the deed thirteen years after it was signed, support the circuit court's conclusion that the property was not intended as a gift, but rather as a distribution of marital assets in contemplation of divorce. In *Roig v. Roig*, 178 W.Va. 781, 364 S.E.2d 794 (1988), this Court discussed the knotty problem of gifts and said:

> However, in keeping with the spirit of *Code*, 48–3–10 [1984], in order for property that is transferred from one spouse to the other during marriage to be excluded from the marital property pool, there must be proof that the property was intended as an irrevocable gift. In this regard, jewelry and fur coats are the type of "gift" that can almost be proven by circumstantial evidence; however, when real property, stocks, bonds, or other stores of family wealth are at stake, it requires considerably more than the simple fact that property was transferred from one spouse to the other to establish a qualified *Code*, 48–2–1(f)(4) [1986] gift. In all instances, the burden of proof is upon the spouse who would claim the gift.

*Id.* 178 W.Va. at 785, 364 S.E.2d at 798. Consequently, we find no error in the circuit court's decision that the garage lot is marital property.

## III.

Mr. Loudermilk asserts that the circuit court erroneously evaluated his contributions to his federal civil service pension at $41,212 instead of $37,597. The argument on this issue is sparse at best, and we find nothing in the record to indicate that the family law master's and the circuit court's conclusions about Mr. Loudermilk's contributions are contrary to the weight of the evidence. As we said in Syl. pt. 5 of *Lieberman v. Lieberman*, 142 W.Va. 716, 98 S.E.2d 275 (1957):

> The findings of the trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless such findings are clearly wrong or against the preponderance of the evidence.

■ Of more serious concern, however, is Mr. Loudermilk's contention that the family law master erred by including as marital property his federal pension (which is awarded to federal employees in lieu of social security benefits) while not including Mrs. Loudermilk's contributions to her social security account. Although at first blush this result would appear to defy logic, nonetheless the circuit court's decision is correct because of specific provisions of federal law.

The Social Security Act, specifically 42 U.S.C. § 407(a), provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

That is very strong, very clear, and very unambiguous language. Indeed, the Supreme Court of North Dakota in the recent case of *Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989), has held:

> The right of a person to future social security payment is non-transferable and nonassignable. 42 U.S.C. § 407(a). Social security rights are not "subject to execution, levy, attachment, garnishment, or other legal process...." *Id.*

In 1975, this enjoinder from "legal process" was partially lifted for "child support" and "alimony." 42 U.S.C. § 659(a). Then, in 1977, Congress confined the kind of "alimony" for which benefits are reachable by "legal process" to "periodic payments of funds for the support and maintenance of the spouse (or former spouse)" of an insured individual. 42 U.S.C. § 662(c) went on to declare explicitly:

> "Such term [alimony] does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses."

Congress prohibited the use of "legal process" to disperse social security for "equitable distribution of property, ... between spouses or former spouses." *Id.* Federal law has carefully limited a divorced spouse's ability to reach expected benefits of the other spouse through legal proceedings.

Interpreting this statutory scheme, the United States Supreme Court held that social security benefits were not an "accrued property right." *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960):

> "[E]ach worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation. It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments." *Id.*, at 609–10, 80 S.Ct. at 1371–72.

The "noncontractual interest" in social security does not vest a property right. [Footnotes omitted]

*Id.* at 5–6. Consequently, in the case before us we conclude that the circuit court

was correct in excluding Mrs. Loudermilk's social security account from the general pool of marital property to be equitably divided.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.