445 S.E.2d 509

**Andrew F. SLEIGH, as Executor of the Estate of Margaret Malloy Sleigh, Plaintiff Below, Appellant,**

v.

**Andrew F. SLEIGH, Richard M. Sleigh, and Mary Bergin Sleigh Skidmore, Defendants Below, Appellees,**

v.

**Richard M. SLEIGH and Mary Bergin Sleigh Skidmore, Counterclaimants Below, Appellees,**

v.

**Andrew F. SLEIGH, Jr., Sean Richard Sleigh, Katherine Sleigh Glaser, Elizabeth Glaser Frye, and Andrew F. Sleigh, Jr., as Executor of the Estate of Margaret Malloy Sleigh, Counterclaim Defendants Below, Appellees.**

No. 21832.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1994.

Decided May 27, 1994.

*Code* 48–2–33(f) [1993]. *See supra* at p. 507.

John R. Haller, Haller & Wagoner, Weston, for appellant.

W.T. Weber, Jr., Weston, for appellees.

PER CURIAM:

This is an appeal by Andrew F. Sleigh, Jr., the executor of the estate of Margaret Malloy Sleigh, from an order of the Circuit Court of Lewis County holding that two checks issued by Andrew F. Sleigh, Sr., to his grandson, Sean Sleigh, constituted loans and were assets of his estate and of the estate of his deceased widow, Margaret Malloy Sleigh. On appeal, the appellant claims that the trial court erred in holding that the checks constituted loans and in not holding that the checks were gifts. After reviewing the record, this Court disagrees. Consequently, the

judgment of the Circuit Court of Lewis County is affirmed.

This case grows out of the fact that Andrew F. Sleigh, Sr., a short time before his death, directed that two checks be drawn and issued to his grandson, Sean Sleigh. The first check, dated January 31, 1988, was for $2,000.00 and was drawn upon an account registered in the name of "Andy Sleigh, Sr." The second check, for $15,000.00, was dated February 5, 1989, and was drawn upon an account registered in the names of "Andy Sleigh, Sr. or Margaret M. Sleigh." Less than a year after the issuance of the second check, Andrew F. Sleigh, Sr., died on January 31, 1990. In his will, he left his entire estate to his wife and widow, Margaret M. Sleigh. The two checks issued to Sean Sleigh were not appraised as assets of the estate of Andrew F. Sleigh, Sr.

Approximately six months after the death of Andrew F. Sleigh, Sr., his widow and sole beneficiary of his estate, Margaret M. Sleigh, died testate on June 28, 1991. Under her will, she left her entire estate, in equal shares, to her three children, the appellant, Andrew F. Sleigh, Jr., Richard M. Sleigh, and Mary Bergin Sleigh Skidmore. Andrew F. Sleigh, Jr., qualified as the executor of his mother's estate. Andrew F. Sleigh, Jr., is also the father of Sean Sleigh.

In addition to leaving a will which divided her estate evenly among her three children, Margaret M. Sleigh left a codicil which devised specific pieces of real property to specific children. In the codicil, she also left a portion of her furniture to her grandson, Sean Sleigh, and certain personal items to her daughter, Mary Bergin Sleigh Skidmore, and to her son, Andrew F. Sleigh, Jr. The validity of the codicil has been legally challenged, and that challenge has not yet been resolved.

While Margaret M. Sleigh's estate was being administered, the fact that Andrew F. Sleigh, Sr., had, during his lifetime, caused the two checks previously mentioned to be issued to his grandson, Sean Sleigh, became known, and a question arose as to whether the checks represented gifts to Sean Sleigh or whether they merely constituted loans which were appropriately a part of the estate of Andrew F. Sleigh, Sr., and thereafter a part of his widow's estate.

As a result of the controversy over the checks, the appellant, Andrew F. Sleigh, Jr., the executor of the estate of Margaret M. Sleigh, petitioned the Circuit Court of Lewis County for a declaratory ruling on whether the checks constituted gifts to Sean Sleigh or whether they were loans to him.

A hearing was held in the declaratory judgment proceeding on July 13, 1992. At that hearing, Andrew F. Sleigh, Jr., testified that the two checks which were written to his son, Sean Sleigh, were unknown to him while his father's estate was being administered and that they had come to his attention only some months later. He testified further that, prior to his father's death, he had spent a good deal of time with his father and, on one occasion in the hospital, his father told him that he had let Sean have a sum of money and that it was forgiven. He specifically testified:

> While he [the witness' father, Andrew F. Sleigh, Sr.] was in the hospital in January, 1990, I spent a good deal of time with him. On one occasion, he told me that he had given—let's get this right, now. That he had let Shawn [sic] have a sum of money. It was forgiven. He never said the amount, anything.[1]

The witness was later cross-examined about this. The cross-examination proceeded as follows:

> Q: If he had forgiven it, it had to be paid back, so that meant that you initially intended, you took it that your father meant that to be a loan.
>
> A: I never made an interpretation of it.
>
> Q: Well, you don't forgive gifts, do you?
>
> A: That was between my father and my—between grandfather and grandson. I didn't have—

1. No objection was interposed to the admission of these remarks, and one attorney specifically stated: "Your Honor, for the record, I would like to note that—I haven't raised the objection as to the competency of this testimony, under the Dead Man's Statute."

Q: He said he was forgiven—he was forgiving—

A: He was forgiving.

Andrew F. Sleigh, Jr., further testified that during the 1960's his son had been placed in the legal custody of Margaret M. Sleigh and that for about four years, from 1964 to 1968, Sean had maintained his home with Andrew F. Sleigh, Sr., and Margaret M. Sleigh.

On cross-examination, Andrew F. Sleigh, Jr., admitted that he was his father's attorney-in-fact and that, on occasion, he had acted in behalf of his father, as well as in behalf of his mother, whose power he also had under a power of attorney. He testified that he had examined the check registers for the accounts upon which the two checks were drawn and that the check register for the $2,000.00 account, a register for an account solely in his father's name, simply showed that it was payable to Sean R. Sleigh.

During the hearing, Mary Bergin Sleigh Skidmore testified that on February 6, 1989, the day after the $15,000.00 check was issued, her mother, Margaret M. Sleigh, told her about it. She testified:

> She was very upset about it. She did— Shawn [sic] had come to ask them for money, and he wouldn't say what he wanted it for or how much he wanted, and finally I think my—the impression I got from my mother, my father sort of got sarcastic and he said, "Well, would $15,-000.00 be enough?" and he said, "Yes." Mother did not want to give him the money, to let him have this loan, because the— he had—she then told me that he had borrowed $2,000.00 the year before and he had not paid it back, so she did not want to give him more because of that. Mother was very business-like, but my dad said, "No.", He said "Just go ahead and write out the check." He had my mother write out the check. She didn't want to.

Ms. Skidmore further testified that the $15,-000.00 check was in her mother's handwriting, but that it was signed with her father's stamp.[2] On further examination, she testified that the register entry for the $15,000.00 check in the register for the account on which it was drawn was in her mother's handwriting, whereas the register entry for the $2,000.00 check was in Sean Sleigh's handwriting.[3] She indicated that her mother was very impartial toward her grandchildren and that she was not aware of any partiality toward Sean. She further testified that her mother did not treat one grandchild differently from another. On the other hand, she indicated that her father had favorites. When asked whether Sean was his favorite, she replied, "I don't think so. I mean, as far as who he seemed to be fondest of and made the biggest fuss over, no. He was very partial to the girls. He had good taste."

During the hearing, the registers for the two accounts on which the checks to Sean Sleigh were drawn were introduced into evidence. The first register contained the entry:

402 1/31 Sean R. Sleigh $ 2,000.00

The second register contained the entry:

138 2/5 Sean Sleigh Loan $15,000.00

Richard Sleigh, the third of the three children of Andrew F. Sleigh, Sr., and Margaret M. Sleigh, testified that he had borrowed approximately $44,000.00 from his mother and father and that he had signed notes for those loans. He indicated that he had made payments on the loans. He said that his mother had made notes of the payments he had made and that she kept very good records. He further testified that he paid off the balance after his mother's death. He testified that his mother never offered to forgive the debt which he owed and that his father never did either. He further testified that he had very little information about the

2. Additional evidence indicated that in his latter days Andrew F. Sleigh, Sr., generally issued checks in this way and that Margaret M. Sleigh participated in the management of the account on which the $15,000.00 check was drawn.

3. There was evidence that all the entries in the register for the account on which the $15,000.00 check was drawn were in Margaret M. Sleigh's handwriting and that, except for the entry for the $2,000.00 check to Sean, all the entries in the register for the other account were in the handwriting of Margaret M. Sleigh or Andrew F. Sleigh, Sr.

size of his parents' estate while they were living and that, to hear his father talk, he didn't have a penny in the world. He stated further that when he found out how much money his parents had, he was thunderstruck. He indicated that his mother was a stickler for business.

At the conclusion of the proceeding, the court ruled that the checks constituted loans.

On appeal, the appellant claims that the trial court erred in holding that the checks were for loans and in not holding that they constituted gifts. He argues that there is a presumption of law in West Virginia that where there is a transfer between close members of a family, there is a presumption that a gift is intended. He also argues that the circuit court erred in failing to apply that presumption to the facts of the present case.

■ In the early case of *Dickeschied v. Exchange Bank*, 28 W.Va. 340 (1886), this Court discussed gifts of personal property at considerable length. In that case, the Court stated, in syllabus point 4:

> Where a party claims title to personal property as a gift, either *inter vivos* or *causa mortis,* the burden of proof, in whatever form the issue may be presented, rests upon him to establish the validity of the gift, of which the delivery of possession is the strongest and most material.

*See also Miller v. Miller,* 189 W.Va. 126, 428 S.E.2d 547 (1993); and *Brewer v. Brewer,* 175 W.Va. 750, 338 S.E.2d 229 (1985). Under this rule, it was incumbent upon the parties asserting that there was a gift to Sean Sleigh to carry the burden of proof and establish that there was, in fact, a gift.

In *Brewer v. Brewer, Id.,* this Court stated what must generally be present for there to be an *inter vivos* gift of personal property. The Court said:

> It is generally recognized that to have a valid *inter vivos* gift three requirements

must be met: (1) there must be an intention on the part of the donor to make a gift; (2) there must be a delivery or transfer of the subject matter of the gift; and (3) there must be acceptance of the gift by the donee. *See* 38 Am.Jur.2d Gifts § 16 *et seq.* (1968).

*Brewer v. Brewer, Id.* at 751–52, 338 S.E.2d at 231.

There is no question that in the present case there was delivery of the two checks in question to Sean Sleigh, and there is no question that he accepted those checks. Therefore, to establish a gift or gifts, the proponents of the gift theory had the burden of demonstrating to the circuit court the fact that Andrew F. Sleigh, Sr., had the intent to make gifts at the time of the delivery of the checks.

■ This Court has been unable to find law which generally establishes a presumption of gift where there is a transfer of personal property between close members of a family. West Virginia Code § 48–3–10 does establish presumptions of gifts in certain transactions between husband and wife, but Andrew F. Sleigh, Sr., and Sean Sleigh, the parties involved in the present case, were not husband and wife, but rather were grandfather and grandson.[4] Likewise, under certain circumstances, where a party's name is added as a joint tenant with the right of survivorship on a bank or like account, there is a presumption of gift. *Koontz v. Long,* 181 W.Va. 800, 384 S.E.2d 837 (1989). But that was not the situation in the present case.

■ As a general rule, the close relationship of parties is, however, an important factor in weighing the evidence relating to the intent of the party transferring the property, but it does not create a presumption which disposes of the necessity of proof of

---

**4.** West Virginia Code § 48–3–10 provides:

> Where one spouse purchases real or personal property and pays for the same, but takes title in the name of the other spouse, such transaction shall, in the absence of evidence of a contrary intention, be presumed to be a gift by the spouse so purchasing to the spouse in whose name the title is taken: Provided, That

in the case of an action under the provisions of article two [§ 48–2–1 et seq.] of this chapter wherein the court is required to determine what property of the parties constitutes marital property and equitably divide the same, the presumption created by this section shall not apply, and a gift between spouses must be affirmatively proved.

intent. On this point, 38 C.J.S. Gifts § 67(c) (1943) states:

> The relationship of the parties is an important factor in weighing the evidence to determine whether there was a gift inter vivos. Where the relationship of the parties is such that the donee has a nature claim on the generosity of the donor, the courts look with favor on the claim of gift and, generally speaking, less evidence is required to support a gift to a close relative than would be necessary to sustain one to a stranger.

In the present case, there was substantial evidence showing that Sean Sleigh was very close to Andrew F. Sleigh, Sr., and Margaret Malloy Sleigh, the wife of Andrew F. Sleigh, Sr. He was their grandson; he for a period of time had lived in their household; Margaret Malloy Sleigh had had legal custody of him as a child; and Margaret Malloy Sleigh attached a codicil to her will, the validity of which is admittedly in question, which gave Sean substantial objects from her home.

In spite of the fact that there was a close relationship between Andrew F. Sleigh, Sr., and Sean Sleigh, there was also substantial evidence indicating that the funds transferred by the two checks in question were transferred as loans. For instance, the check register for the account upon which the $15,000.00 check was written, a register which, from all appearances, was prepared almost contemporaneously with the issuance of the check, contained the notation that the check constituted a "loan." Additionally, there was testimony to the effect that Margaret Malloy Sleigh was upset over the issuance of the $15,000.00 check, and the day after the issuance of the check stated that Sean had previously borrowed $2,000.00 which he had not paid back, a factor indicating that she believed that the advances to Sean Sleigh should be paid back. Lastly, Andrew F. Sleigh, Jr., who is a proponent of the gift theory, testified that when his father, Andrew F. Sleigh, Sr., was in the hospital, Andrew F. Sleigh, Sr., remarked that he had let Sean have a sum of money. According to Andrew F. Sleigh, Jr., this remark was made in conjunction with another remark that "it was forgiven."

This Court has rather consistently indicated that:

> An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syllabus point 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966). *See also M.W. Kellogg Co. v. Concrete Accessories Corp.*, 157 W.Va. 763, 204 S.E.2d 61 (1974); *Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971); and *Pozzie v. Prather*, 151 W.Va. 880, 157 S.E.2d 625 (1967).

In the present case, as previously stated, there was evidence that a register entry was made, apparently somewhat contemporaneously with the issuance of the $15,-000.00 check, indicating that it was a loan. Margaret M. Sleigh, who was privy to the business affairs of Andrew F. Sleigh, Sr., complained on the day after the issuance of the $15,000.00 check that Sean had not repaid $2,000.00 that he had "borrowed" the year before, a circumstance suggesting that the $2,000.00 check was intended as a loan.

To establish that the two checks were gifts, the proponents of the gift theory introduced evidence showing that Sean was a close relative and close personally to Andrew F. Sleigh, Sr., and to Margaret M. Sleigh. As the authorities previously cited suggest, this is a factor which should enter into the weighing of the evidence, but it does not relieve the proponents of adducing proof of a gift. The proponents also introduced evidence suggesting that Andrew F. Sleigh, Sr., had indicated that the advances to Sean were "forgiven." In this Court's view, this evidence does not show that the advances were initially intended as gifts.

After reviewing the overall evidence, this Court cannot conclude that the appellant has shown that the trial court erred in ruling that the transfer between Andrew F. Sleigh, Sr., and Sean Sleigh, in the form of the two checks in question, were made as loans and not as gifts.

■ The Court notes that the appellant also claims that the circuit court erred in failing to recognize that the checks could not be sued upon under the provisions of W.Va. Code § 44–1–14, since they were not appraised in the estate of Andrew F. Sleigh, Sr.

It is true that W.Va.Code § 44–1–14, as previously in effect, required that evidences of debt be appraised before a judgment could be rendered upon them.[5] However, it appears that the proceeding involved in the present case was only a declaratory judgment proceeding and not a collection proceeding, and the trial court's ruling was that the checks constituted loans and not gifts. The question of collection of the loans was not before the court. In view of this, this Court cannot conclude that the circuit court erred in not addressing the collection issue raised by W.Va.Code § 44–1–14.

For the reasons stated, the judgment of the Circuit Court of Lewis County is affirmed.

Affirmed.

---

**5.** West Virginia Code § 44–1–14 has recently been amended. Since the Court believes that the effect of the amendment is unnecessary to the resolution of the present appeal, the Court declines to discuss it.