463 S.E.2d 853

**Virginia Palmer STORRS, Plaintiff
Below, Appellant,**

v.

**Lynn Eugene STORRS, Defendant
Below, Appellee.**

No. 22505.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 13, 1995.

Decided Oct. 13, 1995.

Robert D. Aitcheson, Charles Town, for Appellant.

Sally G. Jackson, Crawford & Jackson, Charles Town, for Appellee.

PER CURIAM:

In this divorce proceeding, Virginia Palmer Storrs, the plaintiff below and appellant herein, appeals the final order of the Circuit Court of Jefferson County entered September 9, 1993. In its order, the circuit court adopted the recommendation of the family law master submitted on July 26, 1993. On appeal, the plaintiff asserts she should have been awarded the marital home, a greater amount of alimony, and attorney's fees. She also contends the circuit court erred in not finding that Lynn Eugene Storrs, the defendant below and appellee herein, secreted certain funds and depleted other marital funds.

1. The defendant retired in 1971.

After reviewing the record, we do not find the circuit court committed error by adopting the findings of the family law master. Accordingly, we affirm the judgment.

## I.

### FACTS

In June of 1936, the parties were first married in Chemung County, New York. They divorced in April of 1966 in Prince Georges County, Maryland, but remarried later that same year. Five children were born of the marriage, all of whom are now adults. The plaintiff filed this divorce proceeding in July of 1990. The issues were bifurcated and the parties were granted a divorce by order entered October 15, 1991.

The family law master conducted three days of hearings beginning April 28, 1993, on the issues of equitable distribution, spousal support and attorney's fees. The recommendations of the family law master allowed the disposition of certain personal property which is not at issue in this appeal. The plaintiff was granted the exclusive use and occupancy of the marital home. However, the home was ordered placed on the market for sale. The plaintiff is to receive $8,938.41 from the sale of the home, which is the difference in value of the assets assigned to her and the defendant. The remaining proceeds from the home are to be divided equally.

The evidence shows that in April of 1963, prior to the first divorce proceeding in 1966, the parties entered into a separation agreement which called for the plaintiff to receive all the interest in the marital home at that time situated in Landover Hills, Maryland. This property was sold for $10,650.25 following the parties' remarriage. Furthermore, when the plaintiff retired in 1972, she received a lump sum payment of her accrued retirement benefits, totaling $17,857.62.[1] This money was used along with the proceeds from the sale of the Landover Hills home to buy the lot and construct the marital home which is now in dispute located in Avon Bend, Jefferson County.

The defendant was ordered to pay alimony to the plaintiff in the amount of $235 per month pending the sale of the home. After the sale of the home, the defendant's alimony obligation will increase to $320 per month. The family law master found both parties should bear their own expenses of attorney's fees and costs because they are in similar economic circumstances.

## II.

### STANDARD OF REVIEW

█ In reviewing the findings and recommendations of a family law master which are adopted by a circuit court, we are guided by the standard of review articulated in Syllabus Point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

> "In reviewing challenges · to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review."

The plaintiff challenges certain factual findings of the family law master in addition to matters concerning questions of law. We will address her contentions below.

## III.

### EQUITABLE DISTRIBUTION

█ The plaintiff contends she should receive full title to the marital home because the money used to purchase the lot and construct the home was primarily obtained through her separate property—her retirement benefits coupled with the proceeds from the sale of the first marital home, which was her property pursuant to the property settlement in the first divorce. Considering the facts of this case, she argues it would be more fair to apply a "source of funds" rule in lieu of a finding that the home in Jefferson County is marital property. The family law master denied her claim and stated:

> "[T]he Plaintiff contributed these sums and allowed the property to be purchased in Joint title over 20 years ago and the Court must presume, given the passage of time, that the Plaintiff intended to make a gift of these sums to the marital estate. Moreover, it appears to the Court that both parties have been employed during the marriage, that both parties have performed services during the marriage and that both parties have contributed to the acquisition of the marital property by employment and it appears the Court should order that the marital property should be distributed equally between the parties."

In *Burnside, supra*, we relied on our holding in *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), to find that a presumption of gift to the marital estate does exist when separate property is converted to jointly held property. In Syllabus Point 2 of *Burnside*, we stated:

> " 'Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute.' Syllabus Point 4, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990)."

This gift presumption may be overcome, however, with substantial evidence that clearly demonstrates the lack of donative intent. In Syllabus Point 3 of *Burnside, supra*, we held that unsupported allegations that a gift to the marital estate was not intended are insufficient to rebut the presumption:

> "When a spouse uses separate property to retire the mortgage of property titled jointly, a gift to the marital estate is presumed. This presumption is rebuttable only by clear, cogent, and convincing evidence that a gift was not intended or that the transaction under scrutiny was the result of coercion, duress, or deception."

The plaintiff asserts the facts of this case are indistinguishable from those found in *Wood v. Wood*, 184 W.Va. 744, 403 S.E.2d 761 (1991), where we upheld the circuit court's

decision to provide for an unequal distribution of marital property because Mrs. Wood used her inheritance as a downpayment on the marital home. We disagree. Significantly, the plaintiff's lump sum retirement funds could best be characterized as marital property and not separate property because the funds were acquired during the course of the marriage.[2] *See* W.Va.Code, 48–2–1 (1992).[3] We agree with the family law master that the proceeds from the sale of the first marital home were converted to marital property when used to construct the second marital residence over twenty years ago. In the absence of evidence to the contrary, we must affirm the circuit court's decision to evenly divide the proceeds from the sale of the home (after the plaintiff receives $8,938.41 to equalize the distribution of the assets). Accordingly, our review of the record demonstrates that the family law master and the circuit court did not err by equally dividing the interest in the marital home.

The plaintiff also contends she should receive full title to the marital home because of the defendant's actions in dissipating the marital assets throughout the marriage. *See* W.Va.Code, 48–2–32 (1984).[4] She argues the defendant controlled the finances throughout the marriage and secreted funds from her.

The plaintiff argues the defendant removed substantial sums of money from joint accounts over the years of the marriage without showing the source of the funds or how the money was spent. On this issue, the family law master specifically found:

"That the Plaintiff believes that the Defendant has substantial sums of money which he has not disclosed to the Court, but has secreted, but that the Court upon review of the testimony of the parties and witnesses and of the evidence addressed does not find there is sufficient evidence to support this theory."

The family law master found that at the time of the parties' separation, the defendant had two bank accounts: a NOW account of approximately $20,840, and a checking account of approximately $4,280. The family law master found the plaintiff had a savings account of $178, two checking accounts totaling $1,400 and $4,000, and a certificate of deposit for $10,000. The plaintiff argues either the defendant had more unidentified accounts taking into consideration his income, or that he wrongfully dissipated the marital funds.

We agree with the plaintiff that the record evidence shows she was not apprised of the

2. The money set aside in the retirement fund for the few months the parties were divorced in 1966 would be considered separate property, although it appears this amount would be insignificant compared to the total amount accumulated over the period of her employment beginning in the mid 1950's until 1972.

3. W.Va.Code, 48–2–1(e) states, in part:

" 'Marital property' means:

"(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section; and

"(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an

expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage."

4. W.Va.Code, 48–2–32, states, in part:

"(c) In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:

\* \* \* \* \* \*

"(4) The extent to which each party, during the marriage, may have conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties: Provided, That except for a consideration of *the economic consequences of conduct as provided* for in this subdivision, fault or marital misconduct shall not be considered by the court in determining the proper distribution of marital property."

couple's financial situation because the defendant managed their finances and did not allow her access to jointly held accounts.[5] The testimony of the parties indicates that substantial factual disputes exist as to how much money was spent when and how much money was withdrawn by the defendant during the course of the second marriage.

The plaintiff testified she would give the defendant approximately $50 of her $110 per week paycheck while she was working. The plaintiff stated she still had to pay the telephone bill, provide her own lunch, and purchase the children's birthday gifts and Christmas gifts. She argues the defendant stockpiled their assets for his own personal use and forced her to live on next to nothing. The plaintiff concedes, however, that she earned substantially the same as the defendant during the time they were both employed.

The defendant testified that he paid the couple's monthly bills from his paycheck. He stated the small sums of money withdrawn over the course of ten years identified by the plaintiff were used basically for living expenses. He also testified that some of the withdrawals were used to finance the couple's extensive travels. The plaintiff admitted to taking regular vacations to Florida and Maine and traveling to Europe. However, she argues she was forced to pay her own way. Finally, the defendant stated that when they reunited after a separation in 1985, he gave the plaintiff $10,000 he inherited from his brother to try and make amends. He stated he accounted for all money presently in his possession and denied secreting funds.

■ After reviewing the parties' testimony and evidence submitted on this issue, we do not find the family law master erred in holding the plaintiff failed to put forth sufficient evidence to support her theory that the defendant dissipated the marital assets. Central to the resolution of this issue is the credibility of the parties. As previously held, witness credibility determinations will not be disturbed by this appellate court. *See State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995) (appellate review is not a device for this Court to replace the lower court's findings with its own conclusions as an appellate court should not decide witness credibility).

## IV.

### ALIMONY

■ The plaintiff argues the family law master and circuit court erred by not considering all factors which would dictate a higher alimony award than $235 per month.[6] The defendant's approximate monthly income is $1,100; after deducting the spousal support payment of $235, he is left with $865. The plaintiff's monthly social security income is $463; adding the spousal support of $235, she has a total monthly income of $698. She argues the difference is unfair.

Our review of the evidence, however, indicates the family law master took into consideration the fact that the plaintiff has the use of the home, rent free, as there is no mortgage on the home. Furthermore, once the home is sold, she will receive $320 per month in alimony for a total monthly income of $788.[7]

For the foregoing reasons, we do not find the circuit court abused its discretion in adopting the family law master's recommended alimony award.[8]

---

5. The evidence also indicates the defendant was verbally and physically abusive to the plaintiff during the course of their marriage. The plaintiff maintains she has suffered permanent physical injuries as a result of this abuse.

6. The plaintiff asserts the family law master did not take into account her substantial medical expenses. However, she failed to submit evidence to support this claim.

7. Based on this evidence, we find the circuit court did not err in not awarding the plaintiff

attorney's fees as it found the parties' economic situations are similar.

8. Finally, we must note that the plaintiff will receive a substantial lump sum settlement following the sale of the marital home. The parties stipulated that the fair market value of the marital home exceeds $60,000. Assuming the home sells for $70,000, the plaintiff will receive approximately $9,000 "off the top" of the sale to equalize the distribution of the assets, and over $30,000, as the remainder of the equally divided proceeds.

## V.

### CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Jefferson County is affirmed.[9]

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

9. We find the plaintiff's remaining assignments of error raised in her petition are without merit.