STATE OF WEST VIRGINIA

**Jonathan R.,**
**Respondent Below, Petitioner**

**FILED**

**April 29, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 15-0400** (Monongalia County 13-D-98)

**Katie R.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

In this divorce action, petitioner Jonathan R. ("the husband"), by counsel Amber Urtso Sellaro, appeals the order of the Circuit Court of Monongalia County, dated April 1, 2015, that reversed the May 20, 2014, order of the Family Court of Monongalia County. The circuit court ruled that a house (but not the lot upon which the house was built) was marital property and that the value of the house was to be divided equally between the parties. Respondent Katie R. ("the wife"), by counsel Edmund J. Rollo, filed a summary response in support of the circuit court's order, to which husband replied.

This Court has considered the parties' oral arguments, briefs, and the record on appeal. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The husband and the wife began dating in 2005, and lived together for four years before they were married on September 10, 2011. They separated on December 17, 2012, and were granted a divorce by order of the family court on May 20, 2014. The family court concluded it was the husband's "involvement with porn sites on the Internet [that] caused the break-up of the parties['] marriage."

The parties challenged one aspect of the family court's order: the allocation of the value of a house (but not the lot upon which the house was built) in the Ashton Estates development in Monongalia County.

The record suggests that the husband's parents are wealthy and generous. For instance, before the parties' marriage, the husband's parents paid off the wife's $60,000 student loan debt. Long before the parties' 2011 marriage, in 2007, the husband's mother bought a house (the "Dayton Street property") in Morgantown, West Virginia, for $180,000. By a 2008 deed, the husband's mother conveyed the Dayton Street property to

1

her son in consideration of the sum of $1.00. The husband's parents never lived in the house. Between 2007 through July of 2012 (that is, before and after the 2011 wedding), the husband and the wife resided in the Dayton Street property.

Twelve days after the parties were married, the husband purchased an empty lot in Ashton Estates for $60,640.31. The lot was deeded in the husband's name only. The money to purchase the lot was the husband's separate, pre-marital property, and was paid from a joint account owned by the husband and the husband's mother. The parties agree that the lot (and only the lot) is the husband's separate property, as it was acquired "during marriage in exchange for separate property which was acquired before the marriage[.]" W.Va. Code § 48-1-237(1) [2001] (defining "separate property"). The parties' dispute centers on whether the house that was later built upon the lot is marital property.

On November 17, 2011, the husband *and* the wife signed an "Agreement between Builder and Owner for the Construction of Residential Dwelling" on the husband's lot in Ashton Estates. Both the husband and the wife signed the agreement as "Owners." Under the contract, both the husband *and* the wife were liable for any and all construction costs. Construction of the Ashton Estates house began in early 2012.

Both the husband and the wife were involved in making decisions regarding construction of the house. However, the wife signed many more of the decision-related documents than did the husband. Of the fourteen construction documents in the record, the wife's was the lone signature on eleven while the husband and wife together signed three.[1] A fifteenth document, the "Ashton Estates Building Design and Landscaping Committee Application for New Construction" lists both the husband and the wife as the "homeowners" of the house.

The husband's parents paid the contractor directly for the construction of the Ashton Estates house. The payments, totaling $321,500, were made directly to the builder from the husband's mother's separate bank account.

The parties moved from the Dayton Street property into the Ashton Estates house in July of 2012. The parties resided together until they separated on December 17, 2012, and the wife later filed for divorce.

---

[1] The wife was the lone signatory on five change order sheets; the color selection sheet; the proposal regarding the retaining wall and various foundation elements; the pre-build worksheet; the pre-build review; the construction pricing agreement (which wife signed as an "owner"); and a second pre-building review. Together with his wife, the husband signed the description of materials; the construction pricing agreement; and one change order sheet.

2

The sole issue disputed by the parties is whether the Ashton Estates house (but not the underlying lot) is marital property. The family court concluded in its order that the house was the husband's separate property, paid for by a "loan" to the parties from the husband's parents. The wife appealed and the circuit court reversed, concluding in its order that the house was a gift by the husband's parents to the parties after their marriage. The parties agreed that the value of the lot was the husband's separate property. Hence, circuit court found that the value of the Ashton Estates house (minus the value of the lot) "is marital property and is to be divided equally between the parties." The husband appeals the circuit court's order.

Our standard for reviewing a circuit court order in a family court matter was set forth in the Syllabus to *Carr v. Hancock*, 216 W.Va. 474, 475, 607 S.E.2d 803, 804 (2004):

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

With this standard in mind, we review the circuit court's and family courts orders.

West Virginia's domestic relations laws generally require a court to divide marital property equally between the parties to a divorce. W.Va. Code, § 48-7-101 [2001]. "Marital property" is defined as including "[a]ll property and earnings acquired by either spouse during a marriage," as well as the "amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from . . . work performed by either or both of the parties during the marriage." W.Va. Code, § 48-1-233(1) and (2) [2001].

The wife asserts, and the circuit court agreed, that the Ashton Estates house was marital property because it was a gift to the husband and wife by the husband's parents. There are three elements to establishing a gift:

> It is generally recognized that to have a valid *inter vivos* gift three requirements must be met: (1) there must be an intention on the part of the donor to make a gift; (2) there must be a delivery or transfer of the subject matter of the gift; and (3) there must be acceptance of the gift by the donee.

*Brewer v. Brewer*, 175 W.Va. 750, 751-52, 338 S.E.2d 229, 231 (1985). The party claiming a gift has the burden of proof. *Dickeschied v. Exchange Bank*, 28 W.Va. 340,

3

360 (1886). However, as a general rule, "the close relationship of parties is . . . an important factor in weighing the evidence relating to the intent of the party transferring the property[.]" *Sleigh v. Sleigh*, 191 W.Va. 326, 330-31, 445 S.E.2d 509, 513-14 (1994). On this point, 38A C.J.S. Gifts § 85 states:

> The relationship of the parties is an important factor in weighing the evidence to determine whether there is a gift inter vivos. Where the relationship of the parties is such that the donee has a natural claim on the generosity of the donor, the courts look with favor on the claim of a gift, and generally, less evidence is required to support a gift to a close relative than would be necessary to sustain one to a stranger.

The wife testified that the Ashton Estates house was a wedding gift from the husband's parents. The parents said to the wife and the husband that they did not want the parties to have a mortgage. Further, they gave the parties no wedding gift,[2] and the land for the house was purchased 12 days after the wedding.

The husband claims that his parents loaned, not gifted, the money for the construction of the house to the parties. However, the wife points out that the husband's parents never told the parties the money was a loan. Further, the husband's parents never mentioned interest rates or payment terms. There was no documentation to establish the money was a loan. Additionally, the parties never made a loan payment to the husband's parents, and the husband's parents never demanded a loan payment from the parties.

The husband conceded in his testimony that he had no documents of any kind suggesting the money was a loan from his parents for the Ashton Estates house. The husband also conceded that he had made no payments to his parents on that loan.

Still, the husband claimed that the money to build the Ashton Estates house was a loan. To support his position, the husband testified that his mother gave him a loan for the previous purchase of the Dayton Street property that, likewise, had no loan documents and no time frame to pay back the loan on that property. The husband's mother testified that she expected no repayment on the new Ashton Estates house until the Dayton Street property was sold; once the money from the sale was applied and the remaining debt determined, she said loan papers for the Ashton Estates house would have been drawn up and the parties placed on a payment schedule.

However, much of the testimony of the husband and his mother conflicted about the Dayton Street property. For instance, the husband testified that he sold the Dayton

---

[2] The husband's mother testified that the parents' gift was the wedding, a reception, and airfare for the parties' honeymoon. The wife, however, testified that she and her own mother paid for many of the wedding expenses.

Street property (after the divorce was filed) and gave his mother *all* of the estimated $140,000 proceeds from the sale. Conversely, the husband's mother testified that her son had given her only $25,000 of the proceeds to pay back "living expenses" and loans she had floated him, but that her son kept the remaining $115,000. Similarly, the husband claimed that the Dayton Street property was purchased mostly with money from the husband's personal investment accounts with the remainder loaned by his parents. Conversely, the husband's mother testified she paid the entire purchase price alone.

Examining this record, the circuit court found there was no evidence of a promissory note or deed of trust evidencing a loan. Additionally, the circuit court found the husband's parents were wealthy and business savvy, yet could produce no contemporaneous writing intimating they made the parties a $321,500 loan. The husband and his mother claimed that the Dayton Street property was to be sold to pay for the Ashton Estates house, yet it was not placed on the market until after the parties separated. Once the Dayton Street property was sold, the husband's mother received only $25,000 as repayment for an unrelated loan and the husband kept the remaining $115,000 (while claiming he had given all of the money to his mother). We cannot say these findings by the circuit court are clearly wrong.

As stated previously, there are three elements to proving a gift: intent by the donor, delivery or transfer, and acceptance by the donee. *Brewer v. Brewer*, 175 W.Va. at 751-52, 338 S.E.2d at 231. It is undisputed that the Ashton Estates house was constructed for the husband and wife, and thereby delivered or transferred into their possession. It is also undisputed that the husband and wife accepted the newly-constructed house, moving in as soon as the house was completed and living there until their separation.

The parties' positions diverge on the question of whether or not a gift was intended by the donors, the husband's parents. The testimony of the parties conflicted on this question. However,

> the intent of [the] donor . . . is not unqualifiedly determined by the formalities which were carried out by the donor. Surrounding circumstances, including the conduct of the parties both prior and subsequent to the transaction in question, their testimony and the testimony of disinterested persons, the abilities and contributions of the parties, their relation to and confidence in each other, and any other factors which might throw light upon their true intent under the circumstances of the particular case must be scrutinized[.]

*Apt v. Birmingham*, 89 F. Supp. 361, 371 (N.D. Iowa 1950). *See also Gertler v. Gertler*, 303 S.W.3d 131, 134-35 (Ky. Ct. App. 2010) (quoting *Sexton v. Sexton*, 125 S.W.3d 258,

5

269 (Ky. 2004)) ("While the donor's testimony is 'highly relevant of the donor's intent[, that intent] may not only be expressed in words, actions, or a combination thereof, but may be inferred from the surrounding facts and circumstances, including the relationship of the parties[,] as well as the conduct of the parties[.]'"); *Foster v. Rose*, 238 P.2d 332, 335 (Okla. 1951) ("The facts and circumstances surrounding the parties, their relationship, and the direct expressions of the [donor] should all be taken into consideration in determining the intention of the donor.").

The circuit court (weighing the conduct of the wife, the husband, and the husband's parents; the relationship of these individuals; and all of the surrounding circumstances) concluded that the husband's parents intended for the Ashton Estates house to be a gift to the parties, and not a loan. The lack of any writing to suggest it was a loan, and the lack of any payments or demand for payments, indicated neither the parents nor the parties believed it was a loan.

After a careful review of the record, we find the circuit court did not abuse its discretion in setting aside the family court's order, or in determining that the Ashton Estates house was a gift to the parties' marriage, and therefore was marital property subject to equitable distribution (following an offset for the value of the lot).

For the foregoing reasons, we affirm the circuit court's April 1, 2015 order.

Affirmed.

**ISSUED**: April 29, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Margaret L. Workman

**DISSENTING:**

Justice Robin Jean Davis, dissenting and writing separately
Justice Allen H. Loughry II

Davis, Justice, dissenting, joined by Loughry, Justice:

The sole issue presented for resolution in the case *sub judice* involves a determination as to whether the house in which the parties resided at the time of their separation is separate property or marital property. In its decision of this case, the majority of the Court has determined that the subject property is marital. I disagree with this conclusion because, simply stated, the house that was built upon the Ashton Estates

lot simply does not satisfy the statutory definition of marital property and has not been treated as such so as to transmute it into marital property. Because the majority has reached a contrary result, I dissent.

Determinative of the pivotal issue herein are the statutory definitions of "separate property" and "marital property." Pursuant to W. Va. Code § 48-1-237 (2001) (Repl. Vol. 2015),

> "[s]eparate property" means:
>    (1) Property acquired by a person before marriage;
>    (2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;
>    (3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage;
>    (4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;
>    (5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or
>    (6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

Under the facts of the instant proceeding, it is clear that the lot upon which the Ashton Estates house was built is separate property because the husband purchased the lot during the parties' marriage using his separate property, *i.e.*, a bank account which he jointly owned with his mother, and the lot was titled in his name only. *See* W. Va. Code § 48-1-237(2). *See also* Syl. pt. 3, *Hamstead v. Hamstead*, 184 W. Va. 272, 400 S.E.2d 280 (1990) ("When an individual during marriage has property which is separate property within the meaning of *W. Va. Code,* 48–2–1(f) [predecessor to W. Va. Code § 48-1-237(2)], and then exchanges that property for other property which is titled in his name alone, and which is not comingled with marital property, then that other property acquired as a result of the exchange is itself separate property."). The parties do not dispute the designation of said lot as separate property.

Where the parties differ, however, is with the characterization ascribed to the house built upon the Ashton Estates lot. The governing statutory provision defines "martial property" as follows:

"Marital property" means:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this State, except that marital property does not include separate property as defined in section 1-238 [§ 48-1-238]; and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

The definition of "marital property" contained in this section has no application outside of the provisions of this article, and the common law as to the ownership of the respective property and earnings of a husband and wife, as altered by the provisions of article 29 [§§ 48-29-101 et seq.] of this chapter and other provisions of this code, are not abrogated by implication or otherwise, except as expressly provided for by the provisions of this article as such provisions are applied in actions brought under this article or for the enforcement of rights under this article.

W. Va. Code § 48-1-233 (2001) (Repl. Vol. 2015). Under this section, any increase in the value of the separate property at issue herein, *i.e.*, the Ashton Estates lot, that has resulted from an expenditure of marital funds or work performed by the parties is marital property. *See* W. Va. Code § 48-1-233(2). However, the increase in the value of the Ashton Estates lot arising from the construction of a house thereon is not related to either the expenditure of marital funds or the parties' efforts during their marriage; rather, the home's construction was financed not by the husband and wife, themselves, but by the husband's parents. As such, the increase in the value of the lot resulting from the construction of the house thereon does not satisfy the statutory definition of marital property attributable to an increase in the value of a spouse's separate property as a result of marital contributions thereto. This is so because no marital funds were expended to

increase the value of the lot or to fund the construction of the Ashton Estates home on said lot. *See* W. Va. Code § 48-1-233(2).

Neither has the character of such separate property been transmuted into marital property because there is no indication that the husband ever intended the home built upon his Ashton Estates lot to be a gift to the marital estate. "A transmutation occurs when the contributing spouse evidences his or her intent to make a gift of the nonmarital property to the marriage by significantly changing the character of the property to marital." Syl. pt. 4, *Mayhew v. Mayhew*, 197 W. Va. 290, 475 S.E.2d 382 (1996), *overruled on other grounds by Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999). *See also Miller v. Miller*, 189 W. Va. 126, 130, 428 S.E.2d 547, 551 (1993) (per curiam) ("Transmutation . . . is the legal process by which nonmarital assets, properties acquired by gift, bequest, devise or descent, may be converted to marital property. . . . This transformation may be effected by an agreement between the parties or by the affirmative act or acts of the parties." (internal quotations and citations omitted)). "This gift presumption may be overcome, however, with substantial evidence that clearly demonstrates the lack of donative intent." *Storrs v. Storrs*, 195 W. Va. 21, 23, 463 S.E.2d 853, 855 (1995) (per curiam).

Alternatively, separate property may be changed into marital property when one spouse gives his/her separate property to the other spouse. Thus,

> [i]n order for property that is transferred from one spouse to the other during marriage to be excluded from the marital property pool, there must be proof that the property was intended as an irrevocable gift. In all instances, the burden of proof is upon the spouse who would claim the gift.

Syl. pt. 2, *Loudermilk v. Loudermilk*, 183 W. Va. 616, 397 S.E.2d 905 (1990). *Accord Roig v. Roig*, 178 W. Va. 781, 785, 364 S.E.2d 794, 798 (1987). Nevertheless, "this presumption may be rebutted by a showing that there was no intent to transfer to joint ownership." *Koontz v. Koontz*, 183 W. Va. 477, 480, 396 S.E.2d 439, 442 (1990) (per curiam).

Thus, while separate property can become marital property through transmutation, such property recharacterization has not occurred in the instant proceeding because there is no evidence whatsoever that the husband intended the house built upon the Ashton Estates lot to be a gift to the marriage or that he transferred the house to the wife either singularly or jointly. At all times relevant herein, the husband remained the sole owner of record of the Ashton Estates lot, he never gave the house to his wife directly, and he never retitled the property jointly to include his wife's name as a record owner. Moreover, the husband's mother testified that she did not intend the house to be a wedding gift to the parties because she and the husband's father had already given the

9

couple substantial wedding gifts including the wedding, a reception, and airfare for their honeymoon. In short, the spouse claiming that separate property has been converted into marital property by way of a gift to the marital estate must prove that such a transformation has occurred. *See* Syl. pt. 2, *Loudermilk*, 183 W. Va. 616, 397 S.E.2d 905. Here, though, the wife has not sustained her burden of proof on this issue because there is no evidence of donative intent on the part of the husband or his mother. *See Storrs*, 195 W. Va. at 23, 463 S.E.2d at 855. Therefore, the circuit court erred in finding that the house built upon the husband's Ashton Estates lot was marital property. Because the majority has affirmed the circuit court's ruling in this regard, I respectfully dissent.